UNITED STATES of America,
Plaintiff–Appellee,

v.

William E. PAUL, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

William Edward PAUL, a/k/a Bill
Paul, Defendant–Appellee.

Nos. 87–2675, 87–6305.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1988.

Bertrand C. Moser, Houston, Tex. (court appointed), for defendant-appellant.

Walter Herman, Albert Ratliff, Frances H. Stacy, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before KING, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This consolidated appeal involves two separate cases. In case number 87–2675, presided over by Judge Norman Black, the defendant, William E. Paul, was convicted by a jury for conspiracy to commit mail fraud under 18 U.S.C. §§ 2, 371 and 1341, arising from an insurance fraud scheme. Paul challenges that conviction on grounds of insufficiency of the evidence.

In case number 87–6305, the indictment charged Paul with conspiracy to commit and the commission of interstate theft arising out of the theft of heavy equipment. Judge Lynn Hughes dismissed this indictment because he found that in an unrelated charge in state court, Paul had pled guilty on the erroneous belief that the federal government had agreed not to prosecute him further.

Because Judge Hughes' dismissal was based upon a motion identical to one that Judge Black denied in case number 87–2675, these cases have been consolidated for our review. We hold that because the state plea agreement expressly related only to further state prosecution, and because the federal government did not participate in Paul's plea agreement, as acknowledged by Judge Hughes, Judge Hughes acted without authority when he dismissed the indictment against Paul. We therefore reinstate the indictment and remand. With respect to Judge Black's case, we hold that the evidence was sufficient for the jury to convict Paul, and therefore affirm his conviction.

I

Paul's three indictments, two in federal court and one in state court, were the result of independent investigations by two FBI agents, each operating without knowledge of the other.

A.

In late October 1984, Paul became a suspect in "Operation Camshaft," an investigation into automobile thefts and related insurance fraud in the Houston area, conducted by FBI agent Terrence Donahue. Based wholly upon evidence developed by Donahue in Operation Camshaft, the State of Texas indicted Paul in December 1985, charging him with theft of a trailer and a Chevrolet Blazer. In February 1986, Paul appeared in state court and entered a guilty plea to these charges. As part of a plea bargain, the state recommended ten years probation, dismissal of another theft indictment, and dismissal of some other counts. After the court had conducted its usual colloquy to ensure that the plea was entered knowingly and voluntarily, Paul's attorney, in order to clarify the terms of this agreement, stated:

May I state something into the record? As a further part of the plea bargaining that no further criminal charges will be filed in State Court arising out of the transactions investigated by FBI Agent Terrance Donahue of Defendant Paul in these cases.

FBI agent Donahue was in the state courtroom at the time the plea was entered, but made no statements to the defendant or the court.

B.

We now turn to examine the facts in the case before Judge Black. During the Camshaft investigation, Donahue taped about forty telephone conversations and face-to-face meetings with Paul. While posing as a dealer in stolen property, Donahue met Paul in November 1984. In December 1984, Paul asked Donahue if he was interested in buying a 1982 Ford pickup truck. Donahue asked him what kind of deal it was, and Paul replied, "Well, you know, you get some time with it." Donahue explained in court that this meant it was an insurance fraud. In other words, Donahue would have a few days with the truck before Paul's cohort, Bullard (who died before trial), reported to the insurers that the truck had been stolen. Donahue agreed to buy the truck for $1,500—$1,000 for the seller and $500 for Paul as a finder's fee. On December 23, 1984, Donahue met Paul at a restaurant, where Bullard was sitting with the appellant. (Donahue did not meet Bullard, however.) Donahue and Paul inspected the truck in the parking lot and exchanged the money and keys. On January 1, 1985, Bullard called the police and reported that the truck had been stolen that day from a shopping mall parking lot. Farmers Insurance Company was informed of the theft on January 7, and mailed a statement of facts form to Bullard in order to process the claim. On January 23, the company received the completed statement of facts, signed by Bullard.

When Paul was arrested by federal agents on November 12, 1986, he admitted that he had sold the truck and that he knew Bullard.

Based upon these facts, Paul was indicted in federal district court for conspiracy to commit and commission of mail fraud under 18 U.S.C. §§ 2, 371 and 1341. The case was assigned to Judge Black. Judge Black

considered, and rejected, Paul's claim that he could not be tried in federal court because his plea bargain in state court rendered the federal prosecution a violation of fundamental fairness. A jury convicted Paul of conspiracy to commit mail fraud, but did not reach a verdict on the two substantive mail fraud counts for which Judge Black entered a mistrial. Judge Black sentenced Paul to five years' imprisonment on the first count and ordered him to pay $4,604.98 in restitution and $50 as a special assessment. Paul appealed this decision, arguing that there was insufficient evidence to convict him of conspiracy to commit mail fraud because his acts in the alleged conspiracy were too far removed from the actual mailing, and that he had no knowledge or intent that the mails should be used. Paul then agreed to stay the appeal in order that it be consolidated with an appeal from the second federal case.

### C.

We now turn to consider the case before Judge Hughes. Paul's indictment in this case arose from a separate FBI investigation conducted by FBI agent Gary Stegar. Agent Stegar began his investigation in August 1985. It was concerned with the theft of heavy equipment in Texas and Oklahoma. His investigation focused initially on Williamson and Peace (who later became codefendants). When reviewing the telephone records of these defendants, Stegar learned of Paul's involvement, and in October 1985, Stegar included Paul in the investigation. Stegar and Donahue were unaware of each other's investigations, or that both investigations had focused on Paul, until 1987.

In this case, Paul was before Judge Lynn Hughes on an indictment charging him with one count of conspiracy to commit interstate equipment theft, and three substantive counts of transporting stolen equipment (Case backhoes). This case arose entirely from the Stegar investigation that had been completely separate in subject matter and circumstance from Donahue's Camshaft investigation. The prosecution, however, announced its intention to introduce portions of the Donahue/Paul tapes from Camshaft in this trial before Judge Hughes. Paul therefore reasserted his claim that federal prosecution was barred by his state court plea agreement. Although Paul did not testify on this issue before Judge Hughes, the judge reviewed the transcript of the evidentiary hearing before Judge Black and was more sympathethic in his response. He dismissed the case, because he found that the federal prosecution was fundamentally unfair. He said:

> The Court concludes that it would be fundamentally unfair to prosecute Mr. Paul under these indictments.

> Under the peculiar circumstances of this case, the Court does not find that any employee of the national government deliberately misled anybody or conspired to procure the resulting unfairness, but under the circumstances of the national government, having given its approval to the plea bargain, as was expressed by State prosecution and everybody else in the State Court action and was referred to and in terms of the plea bargain as the FBI not bringing any more cases in State Court, which is obviously not precise legally, if true in its factual essence.

Thus, in regard to whether the state plea agreement precludes further federal prosecutions of Paul, Judge Black's and Judge Hughes' decisions are contradictory. In addition, Paul argues that even assuming that fundamental fairness is not implicated in either case, there was not sufficient evidence in Judge Black's case to tie Paul to the mail fraud. We will turn first, therefore, to Judge Hughes' decision that dismissed the indictment and then examine the proceedings in Judge Black's court.

## II

■ The question we consider is whether Paul's plea agreement in state court precludes the government from prosecuting him for violations of federal law.

It is clear that the federal government did not participate in Paul's plea bargain. No promises or statements were made regarding federal prosecution upon which

Paul could have relied by either state or federal officials. The record of motion hearings by Judges Black and Hughes indicate that although agent Donahue conferred with state attorneys about the plea agreement prior to the state court hearing, he did not participate in that agreement or make any representations to state officials concerning federal prosecution. He was present at the state court hearing when Paul pled guilty, but he never met with Paul or his attorney and he did not participate in the proceedings in any way.

Paul's attorney at the state court trial, Randy Martin, testified that despite his own subjective impression that the FBI would decide not to prosecute Paul for the federal violations uncovered in Operation Camshaft, Martin nevertheless advised his client, in order that Paul be fully informed, that the guilty plea pertained only to the state court proceedings and that Paul could still be indicted, tried and convicted in federal court. Finally, at the plea hearing, Martin expressly stated on the record that the guilty plea protected Paul from further *state* proceedings in *state* court arising from Donahue's investigation in Camshaft. Paul was present when his attorney made this statement and did not challenge it at that time.

As this circuit has previously stated, the mere presence of a government agent at the state court proceedings does not implicate double jeopardy or due process in any way. *United States v. Sandate*, 630 F.2d 326, 328 (5th Cir.1980). Instead the testimony must show "that the government participated in the plea bargaining or made a firm commitment not to prosecute." *Id.*

In this instance the terms of the plea bargain were unmistakably clear; it applied only to state charges in state court. Federal agents made no agreements, implicit or explicit, with state officials, the defense attorney or Paul himself. To the extent that Paul's guilty plea may have been based upon his mistaken subjective belief that federal agents did not intend to prosecute him, that mistaken impression was neither created nor condoned by federal agents, as Judge Hughes acknowledged

in his ruling. It therefore cannot implicate Paul's rights to fundamental fairness and against double jeopardy in the federal case.

Judge Hughes, however, ruled that prosecution in this case would "be fundamentally unfair" to Paul because the FBI had approved the plea bargain, because Paul had drawn the inference that the state plea was the end of the prosecutions arising from the FBI's Camshaft investigation, because the wording of the plea arrangement left a "boobie-trap" for the unwary defendant, and because the state prosecution was based entirely on the work of the FBI and "fairness requires the national government be burdened with all the proceedings it precipitates."

■ Yet, the record before Judge Hughes showed (1) that the federal government did not participate in Paul's plea bargain, (2) that Paul was informed by his attorney and by statements made in open court for the record, that this plea applied only to state court proceedings, and (3) the fact that the charges before Judge Hughes stemmed from an investigation that was entirely separate from the one that was the subject of the state plea agreement. Judge Hughes acknowledged before rendering his decision that he could find no authority to support it. Indeed, the existing precedent specifically provides that unless a federal agent actually participates in a state court plea bargain, subsequent prosecution in federal court does not violate the defendant's constitutional rights. *Sandate*, 630 F.2d at 328.

We hold therefore that this decision was an abuse of power and must therefore be reversed, the indictment reinstated, and the case remanded.

### III

■ We now examine the second case on appeal, concerning proceedings in Judge Black's court where Paul's motion to dismiss was denied and he was convicted by the jury of conspiracy to commit mail fraud. Paul first contends that Judge Black erred when he ruled that Paul's guilty plea in state court did not preclude

his prosecution in federal court. Paul's argument here carries a greater margin of validity because the state and federal indictments in this case both arose from the same investigation. Nevertheless it is clear, for the reasons given above, that Judge Black did not err when he denied Paul's motion to dismiss.

We turn therefore to Paul's second argument on appeal, whether Judge Black erred when he refused to enter a judgment of acquittal for Paul on conspiracy to commit mail fraud. Paul argues that the evidence is insufficient because it does not establish that there was any agreement to use the mails as part of the scheme to collect insurance proceeds fraudulently.

When reviewing the sufficiency of the evidence, this court views the evidence in the light most favorable to the government, accepting all credibility choices and reasonable inferences from the evidence that support the verdict, and then determines whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *United States v. Basey*, 816 F.2d 980, 1001 (5th Cir.1987).

In this case ample evidence was presented to show that Paul agreed with Bullard that they would sell Bullard's truck to a third party and then report to Bullard's insurance company that it had been stolen. This insurance fraud scheme was revealed by Paul when he told Donahue, the government agent, "Well, you know, you get some time with it," meaning some time before it would be reported stolen. Paul does not contest that this evidence would

be enough to support a conviction of insurance fraud. Conspiracy to commit mail fraud under the United States Code requires additional elements, however; that is an agreement to commit an illegal act by using the mails, and an act in furtherance of that agreement.[1] In this case, the evidence showed an agreement to commit insurance fraud—an illegal act—and several acts in furtherance of that agreement. A use of the mails clearly occurred when Bullard received his claim form, by mail, from Farmers Insurance Company, filled it out and then returned it by mail. Paul argues, however, that he cannot be convicted of conspiracy to commit mail fraud because there was no specific "agreement" to use the mails to commit the conspiracy. The exact method of communicating with the insurance company was apparently never discussed. Paul argues that Bullard could have gone to the local insurance office to file his claim in person. Thus, the mailing was not required to complete the intended scheme. Paul argues that he is therefore being charged under the federal mail fraud statutes on a mere technicality; he did not, he claims, conspire to commit *mail* fraud, because the mailing was an incidental and non-essential part of the intended scheme—insurance fraud.

This question, which essentially challenges the scope of the mail fraud statutes, has been resolved by the Supreme Court in *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954):

The elements of the offense of mail fraud under 18 USC (Supp. V) § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. It is not necessary that the scheme contemplate the use

---

1. 18 U.S.C. § 1341 states in pertinent part:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, ... or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereof ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Section 371 states in part:
   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

of the mails as an essential element.... Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he "causes" the mails to be used.

*Pereira,* 347 U.S. at 8, 74 S.Ct. at 362–63.

Paul admittedly engaged in a scheme to defraud an insurance company. It is an undeniable and uniformly accepted fact that such companies, with large volumes of claims to settle, conduct business with their customers by mail for the convenience of both parties. The use of mails may not occur in each instance of the business, and it arguably may not have been required for the completion of Paul's scheme, but in the absence of evidence that another method was intended, an ordinary person could reasonably foresee that the mails would be used somewhere in the application, processing, and payment of the claim to be made by Bullard as part of the scheme.

Furthermore, this issue was presented to the jury to whom the judge gave detailed instructions on each element of conspiracy, of aiding and abetting and of mail fraud. The jury carried these instructions with them to their deliberations. Obviously, the jury believed that the mailing was reasonably foreseeable. As this circuit has previously stated:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*Bell,* 678 F.2d at 549.

The jury has weighed the evidence and chosen to believe the government's version of how to interpret it. We cannot hold that it was error to do so.

### IV

For these reasons, we hold that in case number 87–2675 the district court is AFFIRMED. In case number 87–6305 the district court is REVERSED, the indictment REINSTATED, and the case REMANDED for further consideration consistent with this opinion.

NO. 87–2675—AFFIRMED, NO. 87–6305 —REVERSED and REMANDED.