**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 00-30483**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**PAUL RICHARD GREEN,**

**Defendant-Appellant.**

Appeal from the United States District Court
for the Western District of Louisiana

March 26, 2001

Before JONES and DeMOSS, Circuit Judges, and BARZILAY[*], Judge.

DeMOSS, Circuit Judge:

Paul Richard Green seeks vacatur of the sentence imposed by the District Court for the Western District of Louisiana, Judge Rebecca Doherty presiding, after he was convicted by a jury on one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, and one count of harboring a fugitive in violation of 18 U.S.C. § 1071. For the reasons discussed below, we affirm the sentence imposed.

---

[*] Judge, U.S. Court of International Trade, sitting by designation.

**BACKGROUND**

Paul Richard Green was employed as a police officer in Lafayette, Louisiana, from 1973 until the time of his arrest in 1996. In January of 1981, Green and several other officers arrested Patrick Ray Colomb, a known drug dealer, at the Lafayette Regional Airport where Colomb was picking up a package of preludes. At the time of the arrest, Green searched the inside of Colomb's car and found a small paper bag containing $5,000. Green took the bag with him, and when asked by Colomb what he planned to do with it, Green responded that Colomb should not worry about it. After Colomb posted bond and was released, Green returned to Colomb the $5,000. Colomb returned the favor by giving Green $500. This transaction was the genesis of a relationship whereby Colomb would pay Green on a monthly basis in return for information about narcotics investigations and possible arrests by the police.

Over time, the monthly amount that Colomb paid Green from the proceeds of his illegal drug activities increased to $10,000. The two continued this monthly arrangement up until 1988, at which time, based upon information provided by Green that a grand jury was investigating Colomb's activities, Colomb fled from Lafayette. Green and the fugitive Colomb continued to meet however. Green began bringing to Colomb's location, the proceeds of his continued drug activities which had been delivered by other co-conspirators to Green. During the time period in which Green served as a

2

conduit for the proceeds of fugitive Colomb's continued drug activities, Green kept some of the money for himself. And over the course of their illicit relationship, Green received a total of over half a million dollars in illegal drug monies from Colomb.

At Green's trial, Colomb testified in detail about the large quantities that both he and other members of his organization, including Alton Miller, sold. In 1987, Miller began hauling cocaine from Colomb's suppliers in Miami, and Colomb regularly discussed various details of these transactions with Green. Cheryl Wiltz, Miller's girlfriend, testified that Miller's relationship with Colomb began in 1987. She knew that someone was giving Miller information about police raids, although she could not identify who. However, she recalled going with Miller to buy a bedroom set for one of Green's children which she understood to be repayment to Green for favors he had done for Miller. Wiltz also testified in detail about the large quantity of drugs involved in Miller's deals.

At the sentencing hearing, Colomb testified that he sold over 50,000 tablets of preludes from 1981 through 1983 and that Green made money by providing information and protecting him during that time. As to the subsequent cocaine sales, Colomb testified that he did not discuss specific quantities with Green, but that Green knew there had been a switch to cocaine and that, based on the amount of money that he received, Green knew "a large amount was coming." Colomb and others testified about the quantities sold for both

3

drugs.

In September of 1996, Green was charged in a superseding indictment with one count of harboring a fugitive in violation of 18 U.S.C. § 1071 and one count of conspiracy to distribute over fifty (50) kilograms of cocaine and over fifty thousand (50,000) tablets of phenmetrazine or "preludes," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B), said conspiracy being in violation of 21 U.S.C. § 846.

Green's first trial resulted in a mistrial. At his second trial, with respect to the conspiracy count, the district court specifically instructed the jury as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That two or more persons made an agreement to commit the crime of distribution of cocaine, phenmetrazine or preludes as charged in the indictment; and
>
> Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose;
>
> To distribute cocaine and phenmetrazine or preludes means for one person to intentionally transfer cocaine and phenmetrazine or preludes to another;
>
> And at the time of the transfer the person making the transfer knew that cocaine and phenmetrazine or preludes were controlled substances.

On September 24, 1997, the jury returned its interrogatory verdict finding Green guilty on both counts of the indictment. The

4

district court denied Green's post-trial motions for judgment of acquittal or alternatively for a new trial.

During Green's initial sentencing, the district court held that the conspiracy verdict was ambiguous because the jury did not specify whether Green conspired to distribute preludes or cocaine, or both. Thus, the district court imposed a five-year sentence, the statutory maximum for preludes, because it concluded that *United States v. Bounds*, 985 F.2d 188 (5th Cir. 1993), requires that when a jury verdict for conspiracy is ambiguous, the defendant must be sentenced based on the drug which produces the lowest guidelines offense level.

A prior panel of this Court affirmed most of the district court's original rulings, but it vacated Green's five-year sentence on the conspiracy count and remanded for re-sentencing based on its conclusion that the jury verdict was not ambiguous and that the jury had in fact found beyond a reasonable doubt that the conspiracy involved both preludes and cocaine. *See United States v. Green*, 180 F.3d 216 (5th Cir. 1999).

On remand, the district court held that 180.4 kilograms of cocaine and a minimum of 50,000 preludes was reasonably foreseeable to Green as part of the conspiracy. The district court determined that the applicable guidelines sentencing range was between 292 and 365 months of imprisonment, and that Green faced a five-year term

of supervised release. Green was sentenced to twenty-five years of imprisonment for the conspiracy conviction and five years for the harboring a fugitive conviction, with the two sentences to run concurrent with one another. Additionally, the district court ordered that, upon release, Green serve a five-year term of supervised release for the conspiracy conviction and a three-year term of supervised release for the harboring a fugitive conviction, again with both to run concurrently. The district court denied Green's request for a downward departure, and it entered an amended judgment reflecting Green's conviction and sentence on April 13, 2000. Green has now timely appealed the sentence imposed by the district court.

## DISCUSSION

In this appeal, Green first argues that his sentence must be vacated in light of the Supreme Court's recent decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), because the jury's verdict cannot be construed as a finding beyond a reasonable doubt that Green conspired to distribute the quantities of drugs which would yield a sentence of twenty-five years. He contends that the specific amount of drugs involved in the conspiracy was not submitted to the jury for its determination beyond a reasonable doubt and that the jury was not specifically instructed that drug quantity was an element of the conspiracy offense of which it was required to make a specific finding. Thus, Green argues that the

6

district court's sentence was based upon its own findings by only a preponderance of the evidence and was, under *Apprendi* and its progeny, an illegal sentence.

Green relies upon this Court's recent holding in *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000), wherein we stated that where the government seeks to enhance penalties "based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." Our decision in *Doggett* was based upon the Supreme Court's pronouncement in *Apprendi* that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be alleged in the indictment and proved to the jury beyond a reasonable doubt. In *Doggett,* we explicitly concluded that drug quantity is such a fact when the quantity is used to enhance a defendant's sentence. *See Doggett*, 230 F.3d at 164-65. We went on to state in *Doggett* that when, as here, the government seeks to enhance a defendant's penalties based upon the amount of drugs involved under 21 U.S.C. § 841(b)(1)(A) or (B), "the quantity must be stated in the indictment and submitted to the jury for a finding of proof beyond a reasonable doubt." *Id.* at 165.

We agree with Green that the district court's failure to specifically state the specific quantity of drugs when it instructed the jury as to the essential elements of the offense it

7

was to find beyond a reasonable doubt, was error under **Doggett** and our prior decision in **United States v. Meshack**, 225 F.3d 556, 575 (5th Cir. 2000). Recently, we addressed precisely the same issue as Green presents in this appeal. In **United States v. Slaughter**, No. 99-11142, __ F.3d __, 2000 WL 1946670 (5th Cir. Jan. 12, 2001), a specific quantity of drugs was alleged in the indictment but the district court failed to instruct the jury that it must find the specific quantity beyond a reasonable doubt. In **Slaughter**, we stated:

> In submitting counts 4, 13, and 17 to the jury, the district judge did not state the specific quantity of cocaine base as stated in each count. This was error. Under our holdings in **Meshack**, **Doggett**, and **Keith**, it is clear that the drug quantity as alleged in each count of the indictment . . . is an essential element of the offense and should be expressly stated by the district court in its instructions to the jury as an element which must be found beyond a reasonable doubt.

**Id.** at *3.

In **Slaughter**, we noted that a defendant's failure to object to the absence of drug quantity in the jury instructions permits this Court to grant relief only if the district court's error in so failing to include drug quantity "rises to the level of plain error." **Slaughter**, 2000 WL 1946670, at *3 (*citing* **Neder v. United States**, 119 S. Ct. 1827, 1833-34 (1999)). And notwithstanding the otherwise plainness of such an error, we noted that under explicit Supreme Court precedent, "a jury instruction that omits an element

8

of the offense is subject to harmless error analysis." **Id.**

As did the defendant in **Slaughter**, Green failed to ever object to the district court's omission of an instruction to the jury that it was required to find a specific drug quantity as an element of the conspiracy offense. Notwithstanding the otherwise plainness of the district court's error, pursuant to our recent decision in **Slaughter**, we may grant Green relief from his sentence only if the district court's failure to more specifically instruct the jury that it must find a specific drug quantity beyond a reasonable doubt, was not harmless. *See* **id**. And in **Neder**, the Supreme Court instructed that the standard for determining harmlessness when a jury is not instructed as to an element of an offense is "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." **Neder**, 119 S. Ct. at 1839. In this case then, we must determine whether the record contains evidence that could lead the jury to rationally conclude that Green was not involved in a conspiracy to distribute at least the specific quantity of drugs properly alleged in the charges of the indictment for which it found him to be guilty. *See* **Slaughter**, 2000 WL 1946670, at *3.

We have reviewed the record of this case and are convinced that it contains no evidence that could rationally lead to a conclusion contrary to the charge that Green was involved in a conspiracy involving at least the amount of drugs specifically

9

charged in the indictment. At trial, there was extensive, detailed, and uncontroverted testimony regarding the scope of the alleged conspiracy and the quantities of the various drugs involved therein.

As was the case in **Slaughter**, the jury had with it during deliberations a copy of the indictment setting forth the specific quantities of drugs which would support the sentence imposed by the district court. Furthermore, the district court explicitly instructed as part of the first conspiracy element that the jury must find that Green agreed to commit the crime of distribution of the named drugs "as charged in the indictment." The relevant conspiracy count in Green's indictment included the specific quantities of drugs supporting the district court's sentence, and we conclude that implicit in the jury's finding on the first element is also a finding of the specific quantities charged in the indictment.

As we have concluded that there was no evidence that could rationally lead the jury to a conclusion that the quantity of drugs stated in the indictment was incorrect, we likewise find that the district court's error in failing to instruct the jury to find a specific amount of drugs beyond a reasonable doubt was harmless. We also find no merit in the additional issues raised by Green in this appeal. Accordingly, we conclude that the district court did not err in sentencing Green based upon quantities of drugs in

accord with those recited in the applicable count of the indictment for which the jury found him guilty beyond a reasonable doubt.

For all of the foregoing reasons, we find no merit in Green's contentions on appeal, and we affirm the sentence imposed by the district court.

**AFFIRMED.**