**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-41246

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JESSIE JOE HERNANDEZ aka "J.J."; MICHAEL DWAYNE HOLMES aka "BIG";
JASON HERNANDEZ; JOHN MANUEL HERNANDEZ aka "TEETER"; STEVIE
HERNANDEZ; CRAIG LAMARIO MOSLEY; VINCENT CARLMEL SELF aka
"Carlmel"; and JAMES DWAYNE ORTEGA aka "FAT BOY",

Defendants-Appellants.

Appeals from the United States District Court
For the Eastern District of Texas
Sherman Division

(98-CR-14-1)

May 24, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge[*]:

This is a direct appeal from final judgments of convictions

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

and sentences of nine codefendants, based on an indictment arising from an alleged drug distribution conspiracy in McKinney, Texas.

I.

On March 13, 1998, a federal grand jury returned a 114-count indictment against thirty defendants.  The defendants were tried in two groups, the instant case involving the trial of James Dwayne Ortega ("Ortega"), Jesse Joe Hernandez ("JJ"), Stevie Hernandez ("Stevie"), John Manuel Hernandez ("John"), Vincent Carlmel Self ("Self"), Jason Hernandez ("Jason"), Craig Lamario Mosley ("Mosley"), and Michael Dwayne Holmes ("Holmes").

The indictment alleged that the defendants were part of a large drug distribution ring from 1992 until March 1998, involving the purchase, storage, processing, repackaging, and sale of a total of more than seven kilograms of crack cocaine, twenty kilograms of powder cocaine, three kilograms of methamphetamine, and 600 pounds of marijuana.  According to the indictment, the defendants converted powder cocaine to crack cocaine; they relied on each other for aid in fulfilling orders when they did not have enough drugs on hand; they networked with each other using telephones, cellular phones, and pagers; they stored the drugs at various stash houses owned or leased by members of the group; and the sites of the stash houses and distribution deals often were located within

2

1000 feet of schools, playgrounds, and other statutorily protected zones.

Holmes and Jason allegedly were the leaders of the conspiracy, pooling their money to increase their purchase power. Self allegedly was the initial supplier of marijuana and powder cocaine to the group. Stevie, JJ, Ortega, and John allegedly distributed the drugs to users and lower level dealers. Mosley allegedly joined the conspiracy in September 1997 when he received two large deliveries of crack cocaine in Arkansas.

Mosley was indicted with one count of conspiracy to distribute controlled substances and to aid and abet the distribution of controlled substances, 21 U.S.C. § 846; he was convicted and sentenced to 240 months imprisonment, $1000 fine, and ten years supervised release. Jason was indicted on one count of conspiracy, 21 U.S.C. § 846; six counts of possession with intent to distribute crack cocaine (four counts), methamphetamine (one count), and methamphetamine/cocaine hydrochloride mixture (one count), 21 U.S.C. § 841(a); three counts of distribution within 1000 feet of a school, public housing authority, or playground, 21 U.S.C. § 860; and three counts of establishment of a place for storage, manufacture, and distribution of a controlled substance, 21 U.S.C. § 856. He was convicted of all but two counts of possession with intent to distribute crack, and one count of establishment of a place for storing and distribution of a controlled substance, and

3

sentenced to life on the conspiracy charge, four twenty-year sentences, four forty-year sentences, and one eighty-year sentence of imprisonment, to be served concurrently. Self was charged on the one count of conspiracy, 21 U.S.C. § 846, and found guilty; he was sentenced to 292 months imprisonment and fined $1000. John was charged with one count of conspiracy, 21 U.S.C. § 846, possession with intent to distribute crack, 21 U.S.C. § 841(a), and two counts of distribution within 1000 feet of a school, 21 U.S.C. § 860; he was convicted on all four counts and sentenced to 120 months imprisonment on each charge, to be served concurrently, and fined $1000. Stevie was charged with one count of conspiracy, 21 U.S.C. § 846, five counts of possession with intent to distribute crack, 21 U.S.C. § 841(a), and five counts of distribution within 1000 feet of a school or playground, 21 U.S.C. § 860; he was convicted on all but one count of possession with intent to distribute crack and one count of distribution in a protected zone, and sentenced to 120 months imprisonment on all counts to be served concurrently. JJ was charged with one count of conspiracy, 21 U.S.C. § 846, three counts of possession with intent to distribute crack, 21 U.S.C. § 841(a), one count of use of a communication facility to commit a controlled substance offense, 21 U.S.C. § 843(b), and three counts of distribution within 1000 feet of a school or playground, 21 U.S.C. § 860; he was convicted on all but one count of possession with intent to distribute and one count of distribution in a

4

protected zone and sentenced to 240 months imprisonment on each remaining count, to be served concurrently, along with a $1000 fine. Ortega was charged with one count of conspiracy, 21 U.S.C. § 846, one count of possession with intent to distribute crack, 21 U.S.C. § 841(a), one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a), one count of use of a communications facility to commit a controlled substance offense, 21 U.S.C. § 843(b), two counts of distribution within 1000 feet of a school or playground, 21 U.S.C. § 860, and one count of establishment of a place to store, manufacture, and distribute controlled substances, 21 U.S.C. § 856; he was convicted of all but one count of distribution in a protected zone and one count of using a communication facility, and sentenced to 292 months imprisonment on the cocaine offenses and 240 months imprisonment on the two remaining charges, to be served concurrently, and six years supervised release. Holmes was convicted of one count of conspiracy, 21 U.S.C. § 846, four counts of possession with intent to distribute crack, 21 U.S.C. § 841(a), one count of use of a communication facility, 21 U.S.C. § 843(b), one count of distribution within 1000 feet of a school, 21 U.S.C. § 860, and two counts of establishing a place for storage, manufacture, and distribution of controlled substances, 21 U.S.C. § 856; he was sentenced to life imprisonment on the first three charges and 240 months imprisonment on the remainder, to be served concurrently.

5

All defendants filed timely notices of appeal.

II.

The defendants make the following arguments on appeal:

Regarding trial and pretrial errors, Stevie, Self, John, Jason, Mosley, and Ortega argue that the evidence is insufficient to sustain their convictions, each contending specifically that the testimony of Patrick Zachery, a confidential informant, was unreliable. Holmes argues that his motion to dismiss the indictment for double-jeopardy reasons should have been granted. Stevie argues that Collin County residents should have been excluded from the jury, or that the trial should have been moved to a different venue, for reasons of excessive pretrial publicity. Stevie also argues that the trial court should have granted his motion to suppress audio tapes and related transcripts as unreliable. Self argues that the admission of acts occurring before the date in the indictment was in plain error. Jason argues that the admission of expert testimony about the nature of the substances seized was in plain error. Ortega argues that the admission of evidence surrendered to police was an abuse of discretion.

Regarding sentencing, Stevie argues that the trial court erred in finding him ineligible for relief under the "safety valve"

6

provision.  Holmes argues that the trial court erred in finding him to be a "leader" for sentencing guidelines purposes.  JJ and Jason argue that the trial court clearly erred in imposing sentence based on the maximum sentence for crack cocaine, rather than the more lenient maximum for marijuana.  Jason, Stevie, Self, Mosley, Ortega, JJ, Holmes, and John raise the issue of whether the district court erred in finding the amount of drugs, for sentencing purposes, by a preponderance of the evidence standard rather than by instructing the jury to find the quantities beyond a reasonable doubt, in contravention of Apprendi v. New Jersey, 530 U.S. 466 (2000).[1]

Stevie, Ortega, Holmes, and Jason argue additionally that the record on appeal is insufficient, in that they have been denied access to many of the motions that had been filed by their codefendants.

III.


A. Pre-trial and trial errors

---

[1] Mosley and Ortega also argue that the trial court clearly erred in its finding regarding the amount of drugs attributable to each of them for sentencing purposes.  The appellants' arguments based on the intervening U.S. Supreme Court decision of Apprendi subsumes these arguments, however, and our disposition of the Apprendi issue serves likewise to dispose of the initial arguments made by Ortega and Mosley regarding the drug amounts attributed to them in sentencing.

7

## 1. Sufficiency of the evidence

We review sufficiency of the evidence challenges by examining the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60 (1942); United States v. Willis, 6 F.3d 257, 264 (5th Cir. 1993).

The conspiracy convictions challenged by Stevie, Self, Jason, John, Mosley, and Ortega have three requisite elements: (1) existence of an agreement between two or more people to violate the narcotics law, (2) knowledge of the conspiracy, and (3) voluntary participation in the conspiracy. 21 U.S.C. § 846; United States v. Mitchell, 31 F.3d 271, 274 (5th Cir. 1994). The agreement may be tacit, and the jury may infer its existence from circumstantial evidence. United States v. Gallardo-Trapero, 185 F.3d 307, 317 (5th Cir. 1999). The defendant's knowledge need only encompass the essential purpose of the conspiracy. United States v. Osgood, 794 F.2d 1087, 1094 (5th Cir. 1986). The jurors may draw inferences from familial relationships and "mere knowing presence" to support the conspiracy conviction. United States v. Burton, 126 F.3d 666, 670 (5th Cir. 1997).

The possession with intent to distribute crack convictions

challenged by Stevie and John have as requisite elements (1) knowing possession of crack cocaine, and (2) intent to distribute it. 21 U.S.C. § 841(a)(1); United States v. Gonzalez, 79 F.3d 413, 423 (5th Cir. 1996). Proof of possession may be inferential or circumstantial. Id.

The distribution in a protected zone convictions challenged by Stevie, John, and Ortega require proof of (1) knowing possession of crack cocaine, (2) within 1000 feet of a protected zone. 21 U.S.C. § 860; United States v. Sparks, 2 F.3d 574, 580 (5th Cir. 1993).

Stevie and John also challenge their convictions for aiding and abetting in these drug offenses. The requisite elements are (1) association in the criminal activity, and (2) some action to help the activity succeed. United States v. Pedroza, 78 F.3d 179, 183 (5th Cir. 1996). Neither actual nor constructive possession of the drugs is required. United States v. Salazar, 958 F.2d 1285, 1292 (5th Cir. 1992).

Viewing the evidence in the light most favorable to the verdict, the testimony presented against each of the defendants, as outlined below, appears uncontradicted and sufficient to support the convictions:

a. Testimony of Zachery

Rather than showing that the evidence against them had been

contradicted or had not shown one of the requisite elements, the defendants argue the insufficiency of the evidence by disparaging the reliability of the testimony against them. The defendants complain that Zachery's uncorroborated testimony is not strong enough to base their convictions on, because Zachery was shown to have lied about his identity to his police handlers, and to have been an addict who was using and selling crack during the period of his cooperation with the police investigation.

However, "the uncorroborated testimony of an accomplice may support a conviction if it is not incredible or otherwise unsubstantiated on its face." United States v. Cravero, 530 F.2d 666, 670 (5th Cir. 1976). Moreover, Zachery's testimony was corroborated by the testimony of other accomplice witnesses and law enforcement agents, all of whom were subject to thorough cross-examination. In light of this corroboration, and in the absence of arguments by the defendants that Zachery's testimony was incredible on its face, we hold that Zachery's testimony supports the convictions.

b. Sufficiency of evidence to support Stevie's convictions

Five witnesses testified to Stevie's activities (that he tested and sold methamphetamines, stored drugs in his leased house, beat up someone to extract a drug debt, pooled money with Jason to

buy one pound of methamphetamines, divided and processed drugs, delivered drugs, ordered payment of a crack debt, vandalized Zachery's car in revenge for a drug debt, and sold crack in controlled buys). Additionally, Stevie was watched and tape recorded by police during the controlled buys. Officer Cogwell corroborated the occurrence of the controlled buys and Stevie's participation in them. Maps generated using aerial photographs show that the stash house was within 1000 feet of two public playgrounds and a school. This evidence is sufficient to meet the elements of Stevie's convictions on conspiracy, possession with intent to distribute, and distribution within 1000 feet of a protected zone.

c. Sufficiency of evidence to support Self's conspiracy conviction

Four witnesses testified regarding the relationship between Self and Holmes (that Self was Holmes's cousin, that he delivered crack to Holmes and had crack picked up for delivery to Holmes, that he was seen with Holmes during drug transactions, that he and Holmes alternately would fulfill drug orders for customers). Self argues that some of the testimony regarded extrinsic acts; the government contends that this evidence was expressly admitted for the legitimate purpose of showing the formation of the conspiracy,

11

identity of the conspirators, relationship of the conspirators, and duration of the conspiracy.  See United States v. Lokey, 945 F.2d 825, 834 (5th Cir. 1991).  We agree with the government's contention, and hold that the testimony against Self was sufficient to support his convictions.

d. Sufficiency of evidence to sustain Jason's conspiracy conviction

Three law enforcement agents testified that they observed Jason direct a confidential informant to Holmes in order to purchase crack.  One witness testified that Jason tried to recruit him into the drug ring.  Other witnesses testified that Jason had others store drugs for him, that he delivered drugs for his co-conspirators, that he picked up drugs from suppliers listed in the indictment, that he beat up and had others beat up drug debtors, that he referred potential buyers to his co-conspirators, that he divided and processed drugs, and that he directed others to deliver drugs.  This testimony was sufficient to sustain Jason's convictions.

e. Sufficiency of evidence to sustain John's convictions

Six witnesses testified that John sold marijuana.  Two

12

testified that he delivered the marijuana on behalf of his brother Jason. Zachery testified that John sold him crack in two controlled buys within 1000 feet of an elementary school. This testimony is sufficient to sustain John's convictions.

f. Sufficiency of evidence to support Mosley's conspiracy conviction

One witness, corroborated by telephone records for the hotel room phone where Mosley was staying and for his pager, testified that he made two deliveries to Mosley of crack cocaine. This corroborated testimony is sufficient to support Mosley's convictions.

g. Sufficiency of evidence to support Ortega's convictions

Evidence showed that one of the stash houses, used for storage, manufacture, and distribution of crack and methamphetamine, was leased to and maintained by Ortega. Zachery, corroborated by tape recordings, testified to a controlled buy involving Ortega. The aerial maps reveal that the site of the buy was within 1000 feet of a protected zone. Another controlled buy was testified to by the informant and by a police officer. This evidence was sufficient to support Ortega's convictions.

13

## 2. Holmes's double jeopardy argument

Holmes argues that he was subjected to double jeopardy because the federal and state prosecutions against him were intertwined such that the state prosecution was a "sham prosecution" that should bar the federal prosecution. See United States v. Paul, 853 F.2d 308 (5th Cir. 1988). Holmes had pleaded guilty in state court to one of the actions charged as an overt act in his federal conspiracy charge. He argues that the testimony in his federal prosecution of Officer Cogwell, a state law enforcement officer, and the testimony of the confidential informants used by Officer Cogwell in his local investigation, showed that the federal and state investigations were impermissibly intertwined. The government argues that a defendant may be prosecuted by dual sovereigns when his actions violate the laws of each. See Heath v. Alabama, 474 U.S. 82, 89-90 (1985). Holmes has the burden of proving a prima facie double jeopardy claim, and we review the district court's factual findings for clear error. United States v. McKinney, 53 F.3d 664, 676 (5th Cir. 1995).

The district court found that there was no evidence of collusion between the federal and state authorities sufficient to meet Holmes's prima facie burden. Joint federal/state cooperation is permissible and does not automatically trigger the sham prosecution rule. United States v. Moore, 958 F.2d 646, 650 (5th

14

Cir. 1992). Holmes must show not just that the two sovereigns shared resources, but that one of them dominated or controlled the prosecution of the defendant by the other. Id. Holmes never showed that a federal agent participated in his state court plea bargain. Thus, he has not shown clear error in the district court's finding that he had not proven a prima facie case of a sham prosecution.

3. Stevie's challenge to jury composition/trial venue

We review a trial court's exercise of substantial discretion regarding venue change and issues regarding pretrial publicity for abuse of that discretion. United States v. Parker, 877 F.2d 327, 330 (5th Cir. 1989).

Stevie contends that the jurors must have been prejudiced by pretrial publicity. The McKinney Courier Gazette ran two front-page stories regarding the arrests of the alleged drug conspirators, picturing Stevie on the front page and identifying him as one of the leaders of the conspiracy (a retraction was later printed on the interior of the newspaper regarding Stevie being a leader of the conspiracy). McKinney is in Collin County, one of seven counties from which members for the jury venire were selected. Stevie argues, with no record support, that one-third of the jurors were from Collin County.

15

The court asked the jury panel (1) if any of them had heard of the case, (2) if any of them subscribed to the <u>McKinney Courier-Gazette</u>, (3) if any of them subscribed to any McKinney newspapers. No venire-member answered affirmatively. One venire-person admitted that he would be prejudiced because of publicity regarding a heroin problem in Plano, and was dismissed. Stevie's counsel, when given the opportunity, asked no further questions of the panel members. He did not object when the jury was empaneled.

Pretrial publicity can be harmful only when the publicity has so saturated the community that the inability to obtain a fair jury can be presumed. <u>United States v. Williams</u>, 523 F.2d 1203, 1208 (5th Cir. 1975). Otherwise, the defendant must prove actual prejudice. <u>United States v. Partin</u>, 552 F.2d 621, 640 (5th Cir. 1977). The responses of the jury venire indicate no actual prejudice resulting from the two newspaper stories. Therefore, we hold that the district court did not abuse its discretion in neither omitting Collins County citizens from the jury nor transferring venue.

4. Stevie's motion to suppress audio tapes/transcripts

Admission of evidence is reviewed for abuse of discretion. <u>United States v. Thompson</u>, 130 F.3d 676, 683 (5th Cir. 1997). We will reverse the district court's decision to admit evidence only

16

when it has relied on an incorrect view of the law or a clearly erroneous factual finding. Id. The government has the burden of laying the foundation for the accuracy of the tape recordings; once the foundation has been laid, Stevie has the burden of proving their inaccuracy. United States v. Polk, 56 F.3d 613, 631 (5th Cir. 1995). When a participant in a taped conversation testifies that the transcript of the conversation is accurate, the foundation for admission has been established. United States v. Rochan, 563 F.2d 1246, 1251 (5th Cir. 1997).

Stevie complains that the recordings resulting from the taping of Zachery's controlled buys were unintelligible, and that the transcripts were unreliable. The district court had found that portions of the tapes were unintelligible, but cited Fifth Circuit precedent that this would not render the tapes unreliable "unless these portions [we]re so substantial as to render the recording as a whole untrustworthy, and that is a determination that is left to the sound discretion of the trial judge." United States v. Mendoza, 574 F.2d 1373, 1378 (5th Cir. 1978). Zachery testified that he spent more than eleven hours reviewing the tapes and the transcripts, and testified that, based on his review, the transcripts were accurate. This establishes the government's burden of authentication, which Stevie does not counter by identifying any particular inaccuracies. His complaint about the unintelligibility of certain portions does not affect the

17

admissibility of the tapes and transcripts, but only affects the weight the jury might have accorded those tapes and transcripts during their deliberations. We hold, therefore, that the district court did not abuse its discretion in admitting the tapes and transcripts.

### 5. Ortega's challenge to the admissibility of evidence surrendered to police

This evidentiary ruling is reviewed for abuse of discretion. United States v. Haese, 162 F.3d 359, 364 (5th Cir. 1998). Ortega argues that his conviction resulted from the introduction into evidence cocaine seized from a rental car. This argument is without merit. Another co-conspirator had a rental car repossessed. At the car dealership, the dealership employees found crack and powder cocaine secreted in the trunk compartment, called police and surrendered it to them. The dealership employees were acting as the private owners of the car, not at the behest of the government, so the Fourth Amendment protections do not apply here to protect Ortega. See, e.g., United States v. King, 55 F.3d 1193, 1196 (6th Cir. 1995). Moreover, the cocaine surrendered by the dealership to the police was not used as an exhibit against Ortega, nor was he implicated in the indictment or the trial proof with the cocaine found in the rental car. His conviction was supported with

18

the cocaine surrendered by Zachery after the controlled buy. Therefore, Ortega's complaint regarding the seizure of this evidence is without merit.

6. Self's challenge to admission of acts occurring prior to the time of the indictment

Self did not object at the time of the introduction of the evidence of crack sales prior to 1992, so his challenge to this admission is reviewed only for plain error. United States v. Vesich, 724 F.2d 451, 462 (5th Cir. 1984). We reverse for plain error only if "(1) there was error (2) that was clear and obvious and (3) that affected a defendant's substantial rights." United States v. Dupre, 117 F.3d 810, 817 (5th Cir. 1997).

Self contends that the admission of testimony by two of his co-conspirators that he cooked down powder cocaine into crack and distributed it to others prior to 1992, the time identified in the indictment as the commencement of the conspiracy, violated Federal Rule of Evidence 404(b). The government argues that the testimony was admitted to show Self's role in the conspiracy, how the conspiracy was structured, and how the co-conspirators were introduced to each other. See Lokey, 945 F.2d at 834. When the evidence assists the jury by explaining the context, set-up, or motive of the charged crime, or forms "an integral and natural part

19

of an account of the crime," it is not extrinsic and excludable under 404(b).  <u>United States v. Campbell</u>, 49 F.3d 1079, 1084 (5th Cir. 1995).  Here, the district court did not commit plain error in admitting the testimony.

7. Jason's <u>Daubert</u> challenge to the testimony regarding nature of seized substances

Jason did not object at trial to the testimony of, nor seek cross-examination on the qualifications of, the forensic chemist who tested and identified the seized drugs as methamphetamines. Therefore, we review his <u>Daubert</u> challenge for plain error. <u>Rushing v. Kansas City Southern Ry. Co.</u>, 185 F.3d 496, 506 (5th Cir. 1999).

The chemist testified regarding her experience, qualifications, and the specific tests she conducted in identifying the substance at issue.  The results of those tests, in addition to her testimony, were admitted without objection or challenge on cross-examination.  There is no clear and obvious error in the district court's decision to admit this testimony.

B. Sentencing issues

1. JJ's and Jason's challenge to sentence based on general

20

verdict form


JJ and Jason contend that, because the general verdict form did not specify which of the four drugs listed in the indictment their conspiracy charges were based on, they should be re-sentenced based only on the statutory maximum for the most lenient drug involved, marijuana.  See Edwards v. United States, 523 U.S. 511 (1998).  They did not raise this issue in the district court, so we review it for plain error.  United States v. Brooks, 166 F.3d 723, 725 (5th Cir. 1999).

Our court has interpreted Edwards to mean that, where none of the evidence presented could suggest that the defendant was involved in just one object-offense to the exclusion of other, more serious object-offenses, "the sentencing court can still conclude that the jury found, beyond a reasonable doubt, guilt for more than just one object-offense."  United States v. Green, 180 F.3d 216, 226-27 (5th Cir. 1999).  Here, there was testimony presented at trial that the conspiracy that JJ and Jason were alleged to be involved in processed, stored, and distributed cocaine, crack cocaine, methamphetamines, and marijuana.  Neither JJ nor Jason point to any evidence that suggests their involvement in the conspiracy was limited only to the distribution of marijuana. Therefore, we find their Edwards claims to be without merit.


21

2. Stevie's challenge to the non-application of the "safety valve" provision

The "safety valve" provision allows for relief from the otherwise applicable mandatory minimum sentence if the defendant proves (1) he does not have more than one criminal history point, (2) he did not use violence or threats of violence in connection with the offense, (3) the offense did not result in death or serious bodily injury to another, (4) he was not a leader or organizer in the offense, and (5) he truthfully provided all information and evidence to the government concerning the offense. 18 U.S.C. § 3553(f). A court's decision not to apply this provision is reviewed for clear error. United States v. Flanagan, 80 F.3d 143, 145 (5th Cir. 1996).

Stevie argues that he attempted to fulfill the last requirement, providing information to the government, but that the government refused to speak with him, and that he should not be punished for the government's refusal. The government counters that it had an appointment to speak with Stevie, Stevie moved the appointment, then on the day of the rescheduled appointment he canceled it. Therefore, the government contends it was not at fault in Stevie's inability to fulfill the final safety valve provision requirement. Moreover, as the government points out, Stevie did not fulfill the other requirements for application of

the safety valve. The evidence demonstrates that he beat up one drug debtor and vandalized the car of another, constituting the use or threat of violence in commission of the offense. Also, Stevie received criminal history points at sentencing for obstructing justice. In light of these facts, the court's refusal to apply the safety valve provision was not clearly erroneous.

### 3. Holmes's challenge to finding that he was a "leader"

Holmes's sentencing guideline level was increased four levels by the finding that he was a leader of the conspiracy. U.S.S.G. § 3b1.1(a). The district court's application of the sentencing guidelines is given great deference. United States v. Goynes, 175 F.3d 350, 353 (5th Cir. 1999). We review factual findings for clear error, and the application of the guidelines de novo. Id.

Holmes's challenge to the finding that he was a "leader" consists entirely of his assertion that the evidence was insufficient to support the finding. The evidence supporting this finding includes (1) testimony regarding weekly purchases of seven pounds of marijuana by Holmes during 1992, (2) testimony regarding pooled money between Holmes and Jason for purposes of operating the drug conspiracy, (3) testimony regarding payment of money to five individuals to pick up, store, and transport drugs for him, and (4) testimony from various accomplices that Holmes ordered transfers of

23

drugs, that he divided and processed drugs, and that he recruited people into the organization.  Holmes's assertion to the contrary is not sufficient to convince us that the district court's finding that Holmes was a leader was clearly erroneous.

## 4. Apprendi challenge

Jason, Stevie, Self, Mosley, JJ, Ortega, Holmes, and John argue that their sentences should be vacated because the jury did not find the quantity of controlled substances used in determining their sentences beyond a reasonable doubt.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).  Pursuant to Apprendi, we have found drug quantity to be an element of the offense that "should be expressly stated by the district court in its instructions to the jury as an element which must be found beyond a reasonable doubt."  United States v. Slaughter, 238 F.3d 580, 583 (5th Cir. 2000) (citing United States v. Keith, 230 F.3d 784 (5th Cir. 2000); United States v. Doggett, 230 F.3d 160 (5th Cir. 2000); United States v. Meshack, 225 F.3d 556 (5th Cir. 2000), on reh'g, 244 F.3d 367, 2001 WL 224656 (March 7, 2001)).

However, we have read Apprendi narrowly, such that the

omission of drug quantities from jury instructions will only rise to the level of an <u>Apprendi</u> error if the drug quantity finding by the sentencing judge increases the defendant's sentence beyond the statutory maximum. <u>Slaughter</u>, 238 F.3d at 583 ("[A] fact used in sentencing that does not increase the penalty beyond the statutory maximum for the crime charged and proven need not be alleged in the indictment and proved to a jury beyond a reasonable doubt."). Regarding drug possession charged pursuant to the quantity-specific sections 841(b)(1)(A) and (B), we will "construe[] the jury's guilty verdict as authorizing a sentence pursuant to the statutory range contained in § 841(b)(1)(C)," which establishes a lower sentencing range without reference to specified drug quantities. <u>Slaughter</u>, 238 F.3d at 582-83.

The statutory maximum sentence provided by section 841(b)(1)(C)–which applies to the defendants' possession with intent to distribute controlled substances counts and to their conspiracy counts–is 20 years imprisonment and at least 3 years supervised release. 21 U.S.C. § 841(b)(1)(C). Self's prior criminal history increases his maximum sentence for possession with intent to distribute to 30 years imprisonment and at least 6 years supervised release. <u>Id.</u> Without enhancing for quantity of drugs, the statutory maximum for distribution in a protected zone–of which Stevie, John, JJ, Ortega, Holmes, and Jason were found guilty–is 40 years imprisonment and at least 6 years supervised release. 21

25

U.S.C. § 860.

In this case, none of the defendants objected during trial to the omission of an instruction to the jury to determine the amount of drugs involved in the conspiracy and possession with intent to distribute charges. Therefore, we review the omission of a drug quantity instruction, raised here for the first time on appeal, for plain error. Under the plain error standard,

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Johnson v. United States, 520 U.S. 461, 466-67 (1997) (citations, alterations, and internal quotations omitted). An error affects "substantial rights" when it alters the outcome of the judicial proceedings. United States v. Olano, 507 U.S. 725, 734 (1993).

If an Apprendi error rises to the level of plain error, we must examine it further to determine if that error is harmless. United States v. Green, — F.3d —, —, 2001 WL 290041, *4 (5th Cir. March 26, 2001); Slaughter, 238 F.3d at 583-84 (5th Cir. 2000); see

26

also <u>Neder v. United States</u>, 527 U.S. 1, 9-10 (1999) (holding that the omission of an element of an offense from the jury charge must be reviewed for harmlessness).  An <u>Apprendi</u> error is not harmless if "the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element."  <u>Neder</u>, 527 U.S. at 19.

Here, Stevie, John, JJ, Ortega, and Self have not shown that the finding of drug quantities by the sentencing judge by a preponderance of the evidence–rather than by the jury beyond a reasonable doubt–enhanced their sentences beyond the statutory maximum.  These defendants received sentences within the statutory range, considering each defendant's prior criminal history.[2] Because none of these defendants' sentences exceeded the statutory maximum, we find that there was no <u>Apprendi</u> error in the district court's failure to instruct the jury to determine the drug quantities beyond a reasonable doubt.  <u>Slaughter</u>, 238 F.3d at 583.

However, Mosley's, Jason's, and Holmes's actual sentences

---

[2] Following are each defendant's actual sentence, with the statutory maximum for that defendant in parentheses, making allowance for prior criminal history but without factoring in enhancements for drug quantities: Stevie, 120 months imprisonment/6 years supervised release (240 months imprisonment/10 years supervised release); John, 120 months imprisonment/6 years supervised release (240 months imprisonment/10 years supervised release); JJ, 240 months imprisonment/10 years supervised release (240 months imprisonment/10 years supervised release); Ortega, 292 months imprisonment/6 years supervised release (480 months imprisonment/6 years supervised release); Self, 292 months imprisonment/5 years supervised release (480 months imprisonment/5 years supervised release).

exceeded the statutory maximums in 21 U.S.C. §§ 841(b)(1)(C) and 860: Although Mosley's 240-month prison term was within the statutory maximum, his 10-year term of supervised release was beyond the maximum of 6 years. Holmes's and Jason's life terms were enhanced beyond the maximum provided by 21 U.S.C. §§ 841(b)(1)(C) and 860 to the maximum of life imprisonment provided by 21 U.S.C. § 841(b)(1)(A) due to the drug quantity found by the sentencing judge by a preponderance of the evidence. However, assuming these Apprendi errors to be plain, we are compelled to find that they are harmless under the Neder standard used by this court in similar cases involving drug quantity Apprendi errors. See Green, — F.3d at —, 2001 WL 290041 at *4; Slaughter, 238 F.3d at 583-84.

Upon a review of the record, our analysis from Green appears equally applicable here:

We have reviewed the record of this case and are convinced that it contains no evidence that could rationally lead to a conclusion contrary to the charge that [the defendants were] involved in a conspiracy involving at least the amount of drugs specifically charged in the indictment. At trial, there was extensive, detailed, and uncontroverted testimony regarding the scope of the alleged conspiracy and the

28

quantities of the various drugs involved therein.

As was the case in <u>Slaughter</u>, the jury had with it during deliberations a copy of the indictment setting forth the specific quantities of drugs which would support the sentence imposed by the district court. Furthermore, the district court explicitly instructed as part of the first conspiracy element that the jury must find that [the defendants] agreed to commit the crime of distribution of the named drugs 'as charged in the indictment.' The relevant conspiracy count in [the defendants'] indictment included the specific quantities of drugs supporting the district court's sentence, and we conclude that implicit in the jury's finding on the first element is also a finding of the specific quantities charged in the indictment.

<u>Green</u>, — F.3d at —, 2001 WL 290041 at *4. Similarly, here the trial court instructed the jury to "first determine, from all of the testimony and evidence in the case, whether or not the conspiracy existed <u>as charged</u>." The indictment, which the jury had during their deliberations, contained a detailed description of the conspiracy, including specific drug quantities. In the absence of evidence on the record indicating that drug quantities different from those alleged in the indictment were involved, we must find

29

that any Apprendi error was harmless.[3]  The conspiracy and possession charges in the indictment referred to specific drug quantities, which were testified to during the trial.  While the defendants attempted to contest their personal involvement in the conspiracy and drug possession charges, they at no point offered evidence or testimony controverting the amounts of drugs involved.

## C.  Sufficiency of record on appeal

The defendants also argue that the record on appeal does not include all the motions filed during the trial by their codefendants, and that their representation on appeal is therefore inadequate.  The government counters that all motions were listed on the docket sheet, and that each of the defendants were given the

---

[3] However, we do not hold, as the Green court did, that the jury implicitly found the drug quantities stated in the indictment. Though the inclusion of the specific drug quantities in the indictment and the instruction to the jury to first find that the conspiracy existed "as charged," in combination with the dearth of evidence indicating drug quantities contrary to those charged in the indictment, compel a holding that the Apprendi errors here are harmless under Neder, they cannot support a holding that the jury made an implicit finding of drug amounts such that there was no Apprendi error.  Here, the trial court instructed the jury that "[t]he evidence in this case need not establish that a particular amount or quantity of [controlled substances] was involved, as alleged in the Indictment, but only that some amount of [controlled substances] was in fact the subject of the acts charged in the Indictment."  Even under the narrow reading of Apprendi adopted in this Circuit, such an instruction is plain Apprendi error when the drug amounts were subsequently used to enhance the defendants' sentences.  Therefore, we only hold that such error, in this case, was harmless.

30

opportunity to supplement the record by requesting that any motion listed on the docket sheet be included in the record.  In this light, and because defendants have the burden to create the record on appeal, <u>United States v. Myers</u>, 198 F.3d 160, 168 (5th Cir. 1999), we find no merit in this argument.

IV.

For the foregoing reasons, the convictions and sentences of the defendants are AFFIRMED.