**FIRST NATIONAL BANK OF DENVER CITY, Appellant,**

v.

**Dallas M. BREWER and Westwind Gas Co., Inc., Appellees.**

No. 07–88–0101–CV.

Court of Appeals of Texas, Amarillo.

July 25, 1989.

Curry, Curry & Robinson, Robert W. St. Clair and Charles B. Frye, Lubbock, for appellant.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

With eight points of error, First National Bank of Denver City challenges the trial court's judgment decreeing that Dallas M. Brewer's security interest in proceeds from the sale of equipment had priority over its security interest in the same collateral. For the reasons to be stated, we will overrule the points and affirm.

Evidence adduced upon a bench trial was that in January of 1981, Dallas M. Brewer sold his 100% stock ownership in Westwind Gas Company, Inc. to Bill C. Hays for $215,000. Hays agreed to pay for his purchase of Westwind by advancing $62,350 in cash and delivering his 9 January 1981 promissory note for the balance of $152,650 to Brewer. Payment of the note was guaranteed by Westwind which, by Hays, pledged "all of its assets as additional security for the payment of the ... promissory note." A financing statement described the collateral listed as security in this manner:

> All assets of Westwind Gas Co., Inc., a Texas corporation, including, but not limited to the inventory, fixtures, machinery, rolling stock and a parcel of real estate located in the West 480 acres of Section 37, Block AX, PSL, Yoakum County, Texas.

Brewer filed the financing statement with the Texas Secretary of State on 22 January 1981.

Thereafter, on 23 July 1982, First National Bank of Denver City loaned Westwind $118,181.05. The promissory note created for the loan was signed by Hays as President of Westwind. The bank drafted, and Hays signed, a security agreement reciting that a security interest is granted in the following collateral:

> Accounts receivable, Inventory, 75 propane tanks, 1973 GMC Truck ID # TCE61TU605099, one 48' × 64' metal building. See attached exhibit "A."

> All inventory, raw materials, work in process or materials used or consumed in debtor's business, whether now owned or hereafter acquired, and all products thereof, whether in the possession of the debtor, or any other person or persons.

The bank filed its financing statement, covering the identical property just described, with the Secretary of State on 28 July 1982.

The bank renewed and extended the note on 28 January 1983, using the same security described in the original loan documents. Prior thereto, on 23 December 1982, the bank filed its last financing statement. Westwind made the "first few payments" on the loan and defaulted "on or about August of 1984."

Hays also defaulted in his payment obligations to Brewer in 1984 and, on 24 May 1985, Hays transferred the stock ownership and Westwind's assets back to Brewer. Brewer gave Hays a "General Release" from all actions and claims sustained in consequence of the sale of Westwind to Hays so that, in Brewer's words, "[i]f Westwind Gas Company incurred any additional debts after [24 May 1985], then [Hays] was no longer responsible for those."

Subsequently, on 5 June 1985, Hays filed his Chapter 7 petition in bankruptcy. By a joint motion filed in the bankruptcy court, Brewer and the bank agreed to sell the assets of Westwind at a private sale for $50,000, "and argue over who owns these proceeds at a later date." The bankruptcy court approved the sale of Westwind's assets. Later, the court, finding that the assets were not part of Hays' bankruptcy estate, and that the creditors claiming a security interest in the property were relieved from the automatic stay of the Bankruptcy Code, ordered the trustee in bankruptcy to hold the proceeds, which he received on or about 7 November 1985, until they were interpleaded in a state court lawsuit.

The bank initiated a declaratory judgment action, seeking a judgment declaring that its security interest in the proceeds is valid and superior to any and all competing claims. There, the bank and Brewer each

claimed, as they each claim on appeal, the proceeds by virtue of the superiority of their competing priorities.

Upon submission of the controversy, the trial court decreed that Brewer's secured claim is valid and superior to all competing claims, and ordered that the $50,000 proceeds, together with accrued interest, be paid to Brewer. At the bank's request, the court made and filed findings of fact and conclusions of law.

█ Initially, the bank charges the court with error in awarding the $50,000 proceeds to Brewer since the undisputed evidence showed that Westwind, as guarantor, was released from liability to Brewer when Brewer agreed to take the Westwind stock from Hays in full satisfaction of the debt owed by Hays and guaranteed by Westwind. In this regard, the bank argues that Brewer's release and discharge of Hays with respect to his 1981 note effectively exonerated Westwind from liability on the debt and, therefore, no debt existed to be secured by the equipment and assets of Westwind.

For the bank's point to overcome the court's adverse finding of priority of claims on which the bank assumed the burden of proof by its declaratory judgment action, two things must appear. First, there must not be any evidence in the record which supports the court's finding that Brewer's secured claim has priority; and, second, the record evidence must establish as a matter of law that the bank's secured claim is superior. Thus, if there is any evidence of probative force which supports the court's finding of priority, the bank's point must fail. *Holley v. Watts,* 629 S.W.2d 694, 696–97 (Tex.1982).

The record reveals that Brewer's security interest was perfected before the bank perfected its security interest. Then, Brewer's security claim, which the bank concedes was a validly attached security interest in the assets and equipment of Westwind, had priority. Tex.Bus. & Com. Code Ann. § 9.312(e)(1) (Vernon Supp.

1989);[1] *In re McBee,* 714 F.2d 1316, 1325 (5th Cir.1983).

Brewer's security agreement was effective between him and Hays and against the bank according to its terms. Sec. 9.201. The security agreement provided that it was equally binding upon Hays and Westwind, and that in the event of a default, Brewer "shall have ... the rights and remedies provided in the Uniform Commercial Code in force in the State of Texas at the date of execution of this Security Agreement." Accordingly, when Hays defaulted, Brewer was entitled to take possession of the collateral. Sec. 9.503; *Kirkman v. North State Bank of Amarillo,* 476 S.W.2d 958, 959 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.).

The record contains Brewer's testimony that Hays transferred the Westwind assets back to him the latter part of May, 1985 as a "voluntary foreclosure." The court credited this testimony by making its eighth factual finding that on or about 24 May 1985, Hays voluntarily turned over to Brewer all of the stock and all of the assets of Westwind. This finding has not been challenged by the bank and, being supported by evidence, the finding is conclusive. *Brooks v. Blue Ridge Ins. Co.,* 677 S.W.2d 646, 650 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

The court was not required to accept the bank's view that the "General Release" released Hays from liability on his note and operated as an acceptance of the stock in full satisfaction of his debt. Since the document purported to release Hays from claims for damage or loss sustained by Brewer in consequence of the sale of Westwind to Hays, the court reasonably could consider that by the release, Brewer, having taken back ownership of the stock and voluntarily foreclosed on Westwind's assets, acknowledged that he would not proceed against Hays for any deficiency. *See Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771–72 (Tex.1982).

Consequently, there is some record evidence of probative force to support the

---

1. A subsequent citation of a section is a reference to that section of the Texas Business and Commerce Code Annotated (Vernon Supp. 1989).

court's finding that Brewer's secured claim has priority. The bank's first point of error is overruled.

■ By its second, third, and fourth points, the bank presents its perceived central issue on lien priorities. The bank utilizes the points to contend that the court erred (2) in its judgment because its lien remained perfected in the sale proceeds while Brewer's lien became unperfected; (3) in finding that the bankruptcy of Hays relieved Brewer of the necessity to file a continuation statement of his 1981 financing statement; and (4) in concluding that the priority of the competing security interests is determined on the date Hays filed his bankruptcy petition.

In brief, it is the bank's theory, evolved from cited authority, that when Hays filed for bankruptcy, his interest in the Westwind stock, if any, became the property of his bankrupt estate, but that the assets of Westwind, which did not declare bankruptcy, never became subject to the bankruptcy court. Hence, neither the creditors of Westwind nor their security interests in its assets were affected by the "automatic stay" as defined in 11 U.S.C. § 362. Brewer contests the theory, citing authority in opposition.

Further developing its theory, the bank submits that although both it and Brewer had perfected security interests in the property with Brewer's interest being superior, Brewer's security interest became unperfected after five years on 22 January 1986, because Brewer did not file a continuation statement. Sec. 9.403(b). As a consequence, the bank concludes, its security interest was elevated into the superior position with respect to the sale proceeds and remained in force through the trial, which commenced on 5 January 1988.[2]

However, a detailed address of either the merits of the bank's theory and Brewer's counter-theory, or the bank's attack on the trial court's finding and conclusion, is unnecessary for a resolution of the subject matter of these points of error. Acceptance of the bank's theory that Westwind's assets were not subject to the bankruptcy court, which found that the assets were not a part of Hays' bankruptcy estate, does not profit the bank.

As we previously noticed, when Hays defaulted in his payment obligations to Brewer, then Brewer, having the superior security interest, exercised his right to take possession of the collateral, the assets of Westwind. At that time, Brewer had the option, upon giving proper notice, to retain the collateral in satisfaction of the indebtedness owed him by Hays and guaranteed by Westwind, section 9.505(b), or to dispose of the collateral in a commercially reasonable manner. Sec. 9.504(a), (c); *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d at 771–72.

■ The record is silent as to notice by Brewer of the exercise of either option, and no question of notice has been suggested. What the record does reveal is that Brewer and the bank, the only parties actively asserting security interests in the collateral, effected, with the aid of the bankruptcy court's orders, a private sale of the repossessed collateral. Under these circumstances, the disposition of the collateral is deemed conclusively to be commercially reasonable. Sec. 9.507(b).

At the time the collateral was disposed of by sale, both Brewer and the bank enjoyed perfected security interests in the collateral with Brewer's being the superior interest. And at the time the cash proceeds were received from the sale on or about 7 November 1985, both security interests still subsisted. As a result, the security interests continued as perfected security interests in the cash proceeds. Secs. 9.203(c), 9.306(c). Then, the relative rights of Brewer and the bank to the cash proceeds were fixed upon receipt of the proceeds, and it is of no moment that there is a judicial declaration of those rights at a later date.

---

2. Parenthetically, it is noted that in pursuing its theory, the bank has not offered an explanation why its security interest last perfected on 23 December 1982, which is not evidenced to be extended by a continuation statement, did not become unperfected on 23 December 1987, a date before the time of trial.

It follows that the bank has not presented by its second, third, and fourth points of error a reason to disturb the trial court's judgment. The points are overruled.

■ In decreeing that Brewer's claim to the proceeds was superior to all competing claims and ordering the entire proceeds paid to him, the court found that Westwind's indebtedness to the bank at the time of judgment was $102,595.41, but did not make a finding of the amount remaining unpaid to Brewer on the 1981 note. With its last four points of error, points five through eight, the bank contends the court erred in awarding the entire proceeds to Brewer because there is no evidence or factually insufficient evidence to establish that at the time of trial (5–6) Westwind owed a debt to Brewer, or (7–8) the amount of debt.

Since, to prevail, Brewer had the burden to prove that Westwind was indebted to him and the amount of the debt, the points are appropriate ones for the bank's challenges to the evidential support for the award. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). The merits of the points must be determined by the familiar standards for evidential review reiterated in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). For the no evidence points to be sustained, a consideration of the record must reveal an absence of evidence of probative force tending to support the award and the amount. For the factually insufficient evidence points to be sustained, a consideration of all the evidence must show that the evidence supporting the award and the amount is so weak, or the evidence to the contrary is so overwhelming, that the award should be set aside.

Properly identified and evidenced before the court were the 9 January 1981 promissory note executed by Hays and guaranteed by Westwind, the related security agreement, and the pertinent financing statement. The note was in the principal amount of $152,650, bore interest on the unpaid balance at the rate of 12% per annum, and was made payable to Brewer "in fifteen (15) equal annual installments, together with all accrued interest." Brewer testified that Hays defaulted on his 1984 annual payment and, by their agreement, Hays made monthly payments for approximately three months. The court found that Brewer was the owner and holder of the note and that Hays defaulted on the payment of the note on or about 24 May 1985.

Given the evidence, the court could calculate that the annual principal payment on the note was $10,176.66, and that a monthly principal payment was $848.05. The court also could calculate that since default in the annual payments occurred in 1984, two annual principal payments totaling $20,353.32 were made, and since default in payment of the note occurred on 24 May 1985 after the agreement for monthly payments was made when the 1984 annual payment was due, no more than seventeen monthly principal payments totaling $14,-416.85 would have been made. Then, the court could calculate that the annual and monthly principal payments aggregating no more than $34,770.17 would reduce the principal balance of the $152,650 note to not less than $117,879.83 without regard for any accrued and unpaid interest. With these calculations supported by the evidence, the court, in addition to making its express findings of some elements of Brewer's ground of recovery, could impliedly find, in support of its judgment, that Westwind was indebted to Brewer in an amount in excess of the cash proceeds which, with interest, totaled $55,045.52.

Thus, there is some evidence of probative force to support the court's award and, after considering all of the evidence, we cannot say that the evidence supporting the award is so weak, or the contrary evidence is so overwhelming, that the award should be set aside. The bank's fifth through eighth points of error are overruled.

Accordingly, the judgment is affirmed.