Revised May 26, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 98-10240**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**FRED RANDALL GOYNES,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 10, 1999

Before KING, Chief Judge, REYNALDO G. GARZA, and JOLLY, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

### I. Factual and Procedural Background

On January 8, 1997, Fred Randall Goynes ("Goynes") was charged in a two-count indictment with mailing threatening communications to Steve McKinzie ("McKinzie") ("Count I") and to Rebecca King ("King") ("Count II"), in violation of 18 U.S.C. § 876. On October 10, 1997, Goynes pled guilty, pursuant to a written plea agreement, to Count I of the indictment. In exchange for his

plea, the government agreed to dismiss Count II.

The factual resume in support of Goynes' plea provides in pertinent part:

Fred Randall Goynes is an inmate in Clements Unit located north of Amarillo, Texas. Goynes wrote several letters threatening various people in the legal community in Amarillo, Texas. He placed the letters in the mail stream at the prison. The letter sent December 20, 1995 [,] contained explicit threats to kill Mr McKinzie. Goynes wrote other threatening letters following his Indictment under this cause number, including another threatening letter to Mr. McKinzie, as well as a letter to the Honorable Mary Lou Robinson.[1]

Goynes was involved in Satanic worship. He told investigators that he would do anything Satan required of him and that he loved the sight of blood. The Presentence Investigation Report ("PSR") stated that Goynes' December 1995 letter to McKinzie indicated that if McKinzie did not accept Satan as his father, Goynes would have his brothers and sisters kill McKinzie. Furthermore, the PSR stated that the letter sent to King indicated that Goynes planned to kill King upon his release from prison by setting her afire and shooting her. Goynes signed his letter to King in blood and stated in the letter that the blood was his own.

The PSR explained that Goynes mailed a second letter to McKinzie on March 12, 1997, indicating that he was going to kill McKinzie, McKinzie's family, King and many others. The letter to Judge Robinson stated that Goynes intended to kill her as a sacrifice to Satan.

The PSR employed the November 1, 1995 version of the Federal Sentencing Guidelines and determined that Goynes' base offense level was 12. The PSR also included a six-level enhancement, pursuant to U.S.S.G. § 2A6.1(b)(1), based on the finding that Goynes' offense involved conduct evidencing an intent to carry out his threats. The PSR also contained a two level enhancement

_____

[1]During the pendency of Goynes' case, he mailed a threatening letter to the presiding judge, Mary Lou Robinson and she recused herself. The case was then reassigned.

2

pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. Thus, the PSR stated that the total offense level attributable to Goynes was 20. Furthermore, the PSR characterized Goynes as a career offender, resulting in a criminal history category of VI, subjecting him to a guidelines range of 70 to 87 months imprisonment.

Goynes' counsel filed several objections to the PSR, including an objection to the six-level increase under § 2A6.1(b)(1) on the ground that Goynes did not evidence an intent to carry out the threats in his letter to McKinzie, other than writing and mailing the letter. The government maintained that the six-level increase was appropriate because Goynes continued to write threats of violence to the same victims following his indictment and because the content of the letters evidenced an intent to carry out these threats.

At the sentencing hearing, Goynes' counsel renewed his objection to the enhancement. He argued that Goynes had taken no action in furtherance of his threats and that the content of the letters, consisting of "rather ridiculous claims that he was going to marshal the forces of evil and satanic demons," did not establish an intent to carry out the threats contained therein. The district court overruled Goynes' objection, finding that the six-level increase was appropriate under the facts of the case. The district judge stated:

> There was a series of threatening letters, but I think it's proper under the guidelines to treat those as separate offenses for guidelines purposes. The first letter was in December of 1995. The second one did not take place until a year and three months later. And then there was still another letter in October of 1996. And then that was followed by another letter, five months later, those to Rebecca King. So based on the repeated acts of the defendant, I will overrule the objections to the guidelines.

Goynes' counsel noted that the PSR had employed thev1995 version of the Federal Sentencing Guidelines, imposing a six-level increase, rather than a two-level enhancement for multiple

3

threats, pursuant to § 2A6.1(b)(2), under the 1997 version of the Federal Sentencing Guidelines. Counsel asserted that Goynes was entitled to the use of the 1997 Federal Sentencing Guidelines and that the court should have only imposed a two-level increase rather than a six-level increase. The district court overruled counsel's objection on the ground that there were other calculations to be considered which rendered the 1995 version more appropriate.

The district court sentenced Goynes to the statutory maximum of 60 months of imprisonment followed by a three-year supervised release period. This appeal followed.

## II. Standard of Review

A sentence imposed under the Federal Sentencing Guidelines will be upheld on review unless it can be demonstrated that it was "imposed in violation of law; imposed as a result of an incorrect application of the sentencing guidelines; or outside the range of the applicable sentencing guideline and is unreasonable." *United States v. Garcia*, 962 F.2d 479, 480-81 (5th Cir.), *cert. denied*, 506 U.S. 902 (1992). This Court affords great deference to the trial judge's application of the sentencing guidelines. *United States v. Condren*, 18 F.3d 1190, 1193 (5th Cir.), *cert. denied*, 513 U.S. 856 (1994).

In examining the sentence imposed, we review the trial court's application of the sentencing guidelines *de novo. United States v. Crow*, 164 F.3d 229, 238 (5th Cir. 1999). The district court's factual findings, for sentencing purposes, are reviewed under the clearly erroneous standard. *United States v. Millsaps,* 157 F.3d 989, 995 (5th Cir. 1998). The district court's determination that Goynes' conduct evidenced an intent to carry out his threat is a factual finding, and must be reviewed for clear error. *United States v. Stovie*, 122 F.3d 122, 129 (2d Cir. 1997).

### III. Discussion

The issue presented before this Court is whether the district court erred in assessing a six-level sentencing enhancement, pursuant to U.S.S.G. § 2A6.1(b)(1), for conduct evidencing an intent to carry out the threats contained in Goynes' letters. Goynes argues that the enhancement was inappropriate because he did not take action in furtherance of the threats contained in his letters. He states that he did not stalk or confront the recipients of the letters or arm himself. In fact, he could not do any of these things because he was incarcerated when he made these threats. The government contends that Goynes' repeated threats were sufficient to support the sentencing enhancement.

Section 2A6.1(b)(1) provides that, "[i]f the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." U.S.S.G. § 2A6.1(b)(1). There are no published cases from this Circuit which address the application of § 2A6.1(b)(1). However, in an unpublished decision rendered by this Court, we determined that the imposition of a six-level enhancement under § 2A6.1(b)(1) was not reversible error. *See United States v. Myers*, No. 93-9111 (5th Cir. July 14, 1994) (unpublished). In *Myers*, we found that the enhancement was appropriate because, in addition to making numerous threats, the defendant had attempted to break into the victim's apartment, had been arrested for slashing her sister's tires and had obtained a revolver. *Id.* at 6-7. The government agreed with the defendant that the mere repetition of his threats was insufficient to establish an intent to carry out the threats. *Id.* at 6. Due to the lack of precedent on this issue in this Circuit, we turn to other circuits for guidance. Our sister-circuits in discussing § 2A6.1(b)(1), however, are split in its application.

The majority of circuit courts require that a defendant engage in some form of overt act before

5

sustaining a § 2A6.1(b)(1) enhancement.[2] The Seventh Circuit, however, suggests that the content of the defendant's threats alone are sufficient to support a § 2A6.1(b)(1) enhancement. *United States v. Thomas*, 155 F.3d 833, 839 (7th Cir.), *cert. denied*, 119 S.Ct. 606 (1998).

In *Thomas*, the court upheld the imposition of the six-level increase under § 2A6.1(b)(1). *Id*. at 839. It determined that the defendant's violent letters, including one in which he stated that he was willing to be charged with battery if he ever saw his victim walking down the street, evidenced an intent to carry out the threats expressed within his letters. *Id*. The court held that the district court did not err in considering three other threatening letters that the defendant had written after he had written the two letters which served as the basis for the indictment. *Id*. The Court concluded

_____

[2]*United States v. Morrison*, 153 F.3d 34, 52 (2d Cir. 1998) (affirming district court's determination that defendant's repeated telephone calls to victims, calling family members of victim and distributing derogatory materials about her sufficiently supported the court's departure); *United States v. Berndt*, 127 F.3d 251, 259-60 (2d Cir. 1997) (upholding enhancement based upon defendant traveling from Germany to victim's home and entering her property without permission); *United States v. Sovie*, 122 F.3d 122, 129 (2d Cir. 1997) (ruling that conduct of defendant was insufficient where defendant intended to meet victim and had obtained victim's address and unlisted telephone number); *United States v. Kirsh*, 54 F.3d 1062, 1073 (2d Cir.) (concluding defendants' purchase of guns and attempted purchase of ammunition during time they were sending threatening letters was conduct sufficiently evidencing intent to carry out their threats), *cert. denied*, 516 U.S. 927 (1995); *United States v. Green*, 25 F.3d 206, 211 (3d Cir. 1994) (concluding defendant's requesting friend to run license plate check constituted conduct evidencing intent to carry out threats); *United States v. Gary*, 18 F.3d 1123, 1128 (4th Cir.) (finding evidence of intent sufficient to support enhancement based on defendant's "stalking" victim, repeatedly visiting her apartment and vandalizing her home and car), *cert. denied*, 513 U.S. 844 (1994); *United States v. Hines*, 26 F.3d 1469, 1474 (9th Cir. 1994) (noting defendant's statement he would kill President, sending of postcards and letters to friends and relatives stating he wanted to kill President, being armed with two large knives when arrested, and threat to kill woman and molest postal inspector's children was sufficient to justify six-level enhancement); *United States v. Taylor*, 88 F.3d 938, 943 (11th Cir. 1996) (finding victim and her family had been forced to move twice, change their phone numbers three times to evade defendant prior to defendant sending communications supported § 2A6.1(b)(1) enhancement, as did testimony by defendant's former cellmate stating that defendant had solicited him to kill victim and her husband); *United States v. Barbour*, 70 F.3d 580, 586 (11th Cir. 1995) (concluding enhancement was properly applied where defendant went to Washington D.C. carrying one hundred rounds of ammunition two weeks prior to his threats), *cert. denied*, 517 U.S.1147 (1996).

6

that the letters themselves evidenced an intent to carry out his threats. *Id*.

In *United States v. Carter*, 111 F.3d 509, 513 (7th Cir. 1997), the Seventh Circuit once again upheld the imposition of the § 2A6.1(b)(1) enhancement. The court found that the nature of the defendant's threats, his possession of weapons specifically referred to in connection with the threats, and his past physical abuse of the victim, sufficiently supported the enhancement. *Id.* at 513-14. In addition, the court stated that in assessing a defendant's intent, "courts may evaluate not only a defendant's overt activity connected to the threat, but also the nature and seriousness of the threats themselves." *Id.* at 513. *See United States v. Sullivan*, 75 F.3d 297, 302 (7th Cir. 1996) (noting that in determining whether defendant intended to carry out threat, courts have not only looked at "overt activity" but also to nature of threats themselves). Thus, at first glance it appears that the Seventh Circuit does not require any specific action in furtherance of the defendant's threats to find a six-level enhancement under § 2A6.1(b)(1). However, while *Sullivan* and *Carter* have suggested that the content of the defendant's threats alone can support a § 2A6.1(b)(1) enhancement, they have relied in part on the defendant's conduct in concluding that an enhancement was justified. *Sullivan*, 75 F.3d at 302-03 (upholding enhancement based upon defendant shooting out victim's husband's car windows and his verbal repetition of threats against victim to law enforcement officer); *Carter*, 111 F.3d at 513-14 (affirming district court's application of § 2A6.1(b)(1) because defendant was arrested while in possession of semiautomatic pistol, three loaded, matching magazines and firearm with which he threatened to kill victim).

*Thomas* is the only case in which the court of appeals has found threats alone sufficient to support a § 2A6.1(b)(1) enhancement. This Court, however, refuses to follow *Thomas*' rationale. Holding that threats are enough to support a § 2A6.1(b)(1) enhancement would contradict the plain

language of the Guideline, which authorizes an enhancement where the offense involves conduct evidencing an intent to carry out the threats. Therefore, this Circuit adopts the majority view requiring some form of overt act to sustain a § 2A6.1(b)(1) enhancement.

Goynes asserts that the new § 2A6.1(b)(2) demonstrates that the Commission did not intend for multiple threats to trigger § 2A6.1(b)(1) because if the Sentencing Commission intended § 2A6.1(b)(1) to cover multiple threats, there would have been no need to create a new enhancement specifically addressing those threats. Although we have no legislative history or commentary to assist us in determining why the Commission enacted amended § 2A6.1(b)(2), we find Goynes's argument persuasive and that it reinforces this Court's decision requiring an overt act to sustain a § 2A6.1(b)(1) enhancement.

We conclude that the writing of multiple threatening letters and the nature of their content alone are insufficient to justify the district court's six-level enhancement. Moreover, although Goynes' threats are extremely violent and one of the letters is signed in blood, we find that these acts are merely threats and not conduct sufficiently evidencing an intent to carry out a threat. Furthermore, although the signing of the letter in blood is disturbing, it is not in any way an actual step toward the realization of Goynes' threats. Clearly, Goynes did not purchase a weapon or ammunition, travel to the victim's home or city, strike the victim or do any other clearly recognizable overt act that could be considered conduct evidencing an intent to carry out his threat. Thus, we vacate Goynes' sentence and remand to the district court for resentencing. Furthermore, to obviate any potential *ex post facto* problems the district court is directed to use the 1995 Sentencing Guidelines on resentencing.

8

## IV. Conclusion

For the aforementioned reasons we find that the district court improperly applied the Sentencing Guidelines. Accordingly, the district court's decision is hereby VACATED and REMANDED for resentencing.