# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20454

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2017

Lyle W. Cayce
Clerk

Consolidated With 15-41627

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

TYRONE EUGENE JORDAN,

      Defendant–Appellant.

Appeals from the United States District Court
for the Southern District of Texas

Before JONES and OWEN, Circuit Judges, and ENGELHARDT, District Judge.*

PER CURIAM:

      Tyrone Eugene Jordan appeals his conviction under 18 U.S.C. § 1521 for filing false liens or encumbrances. He additionally contends that the district court erred in applying a sentencing enhancement under § 2A6.1(b)(1) of the

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

No. 15-20454
Cons w/ No. 15-41627

Sentencing Guidelines that increased the base offense level by six levels.[1] We affirm the district court's judgment.

## I

A jury convicted Jordan of conspiracy to launder money and conspiracy to smuggle illegal aliens, and he was sentenced to sixty-three months in prison and three years of supervised release. While in prison, Jordan began filing various documents and affidavits in the court in which he was tried for those offenses, claiming he was wrongfully convicted. The Government did not respond to those filings. Jordan then filed a "Notice of Default," alleging that the Government had agreed to his assertions through its silence and that he would seek "remedy/redress." He then filed what he denominated an "Affidavit in Support of Motion for Summary Judgment," which asserted that the trial prosecutor owed him $75,000 in damages and that he had been wrongly imprisoned and forced to participate in prison labor. He subsequently sent a notice to the trial prosecutor, stating that because she had failed to respond to his filings, a contract had been formed and she owed him $6,534,500 in liquidated damages. He sent further demands and then began to include in his filings the judge who presided during his trial, demanding $6,534,500 from the judge as well.

After filing approximately forty documents in the district court, Jordan filed the three documents for which he was indicted in the present case. The first was a U.C.C. Financing Statement filed with the Texas Secretary of State, listing the trial prosecutor as a debtor and Jordan as the secured party. The statement listed a $6,534,500 contract as collateral. The second and third documents, both titled "Affidavit of Obligation Commercial Lien," were filed in

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2A6.1(b)(1) (U.S. SENTENCING COMM'N 2015) (hereinafter U.S.S.G.).

No. 15-20454
Cons w/ No. 15-41627

the Harris County, Texas Clerk's office and listed the prosecutor and judge as debtors. Each filing was the basis for a separate count in the indictment, which alleged that Jordan "filed, attempted to file, or conspired to file . . . any false lien or encumbrance against the real or personal property" of the prosecutor and judge in violation of 18 U.S.C. § 1521. A federal district court later declared the three documents null and void.

A trial proceeded on the three counts alleging that Jordan had violated 18 U.S.C. § 1521. During the jury's deliberations, it sent a note asking "[i]f a lien was filed in Harris County, does it affect one person's real property in Corpus Christi." At the hearing to discuss the note, Jordan's attorney argued that "[a]s a factual matter it doesn't affect their real property. . . . I don't know whether you can tell them that or not. I think that's the truth." Jordan's attorney acknowledged that the information was outside the record but asked the judge to take judicial notice that the filings in Harris County could have no effect on property located in Corpus Christi. The judge declined and responded to the jury in writing, stating that "[a]ll the evidence is already before the jury. Please continue to deliberate." The jury convicted Jordan on all three counts.

The pre-sentencing report recommended a six-level enhancement under § 2A6.1(b)(1) of the Guidelines for "conduct evidencing the intent to carry out such threat,"[2] an enhancement to which Jordan objected. The district court overruled the objection and applied the enhancement, which resulted in an advisory Guidelines sentencing range of 97 to 120 months of imprisonment. Jordan was sentenced to 120 months of imprisonment, the statutory maximum, for each count, to run concurrently.

---

[2] *Id.*

3

No. 15-20454
Cons w/ No. 15-41627

## II

Jordan argues, on various grounds, that the evidence was insufficient as a matter of law to prove a violation of 18 U.S.C. § 1521.  Jordan preserved appellate review of the insufficiency of the evidence challenge through his motion for a judgment of acquittal at the close of all evidence.[3]  We review the district court's denial of the motion de novo.[4]  "Accordingly, this court reviews to determine whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt."[5]  We "view[] the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict."[6]

When a "sufficiency of the evidence claim necessarily involves interpreting the meaning of the . . . statute," we review the question of statutory interpretation de novo.[7]  The statute under which Jordan was convicted provides:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an [officer or employee of the United States], on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement

---

[3] *United States v. Olguin*, 643 F.3d 384, 393 (5th Cir. 2011); *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000).

[4] *Ferguson*, 211 F.3d at 882.

[5] *Olguin*, 643 F.3d at 393.

[6] *Id.* (quoting *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001)).

[7] *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008) ("The starting point for interpreting a statute is the language of the statute itself. When construing a criminal statute, we must follow the plain and unambiguous meaning of the statutory language. Terms not defined in the statute are interpreted according to their ordinary and natural meaning . . . as well as the overall policies and objectives of the statute." (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004))).

No. 15-20454
Cons w/ No. 15-41627

or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.[8]

The text does not lend credence to Jordan's various arguments as to the meaning of this provision, and decisions from two other circuit courts support the conclusion that the evidence is sufficient to support Jordan's conviction.[9]

Jordan asserts that none of the three filings are liens or encumbrances. With regard to the U.C.C. Financing Statement filed in the Texas Secretary of State's office, Jordan observes that the security interest claimed in the filing "is not a security interest in property of the Assistant United States Attorney" and that the filing "purports to create a security interest in a non-existent contract." Jordan recognizes that § 1521 covers "attempts" but argues that "it is not a federal offense to attempt to create a security interest in a non-existent contract." If we were to accept this argument, we would read "false" out of the statute. The U.C.C. filing stated that it covered "collateral" and identified a "contract." The fact that no such contract exists means that Jordan's claim that he has a security interest in collateral is an attempt to file a false encumbrance.

Decisions of the Eighth and Ninth Circuit have addressed and rejected arguments, and contentions that inhere within them, that are similar to Jordan's. In *United States v. Reed*, the defendant argued that his filing did not identify any property that the judges owned.[10] The Eighth Circuit concluded that this was immaterial because the filing at issue identified various matters as collateral that, though not actually property of either judge, were the "types

---

[8] 18 U.S.C. § 1521.

[9] *See United States v. Neal*, 776 F.3d 645, 653-54 (9th Cir. 2015); *United States v. Reed*, 668 F.3d 978, 984-85 (8th Cir. 2012).

[10] 668 F.3d at 984.

of personal property against which valid liens can be filed."[11]   The Eighth Circuit observed, "[n]o doubt the filing would not have succeeded in perfecting a priority claim to any property as a matter of commercial law.  But that is not a defense."[12]   That court also concluded that "[t]he prohibition in 18 U.S.C. § 1521 is triggered by the filing of a false or fictitious lien, whether or not it effectively impairs the government official's property rights and interests. Indeed, legal insufficiency is in the nature of the false, fictitious, and fraudulent liens and encumbrances that Congress intended to proscribe."[13]   We agree with the Eighth Circuit's construction of § 1521, as did the Ninth Circuit in *United States v. Neal*.[14]

In *Neal*, the Ninth Circuit rejected the defendant's argument that "there was no evidence that the collateral he attempted to attach . . . was real or personal property of a federal employee as required by the statute."[15]   That court explained that "[b]ecause the statute can be violated without completed conduct, the harm the statute protects against arises from the nature of the documents to be filed, not the validity of the documents."[16]   The court continued, "the statute criminalizes the filing of, the attempting to file, or the conspiring to file *false* liens or encumbrances, not *false valid* liens or encumbrances."[17]   It was irrelevant that the filing did not pertain to real or personal property that an employee actually owned:

> [T]he terms "real and personal property" are not intended to limit the scope of the statute, but rather to indicate the class of documents prohibited by the statute.  The statute prohibits the

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 984-85.

[14] 776 F.3d at 654-55.

[15] *Id.* at 651.

[16] *Id.* at 653; *see also id.* ("Again, validity is not a prerequisite for violation.").

[17] *Id.*

filing of, the attempting to file, or the conspiring to file documents of the sort that could create false liens and encumbrances against federal employees. The prohibition is triggered by the type of document and resulting harm without regard to the validity or existence of the identified collateral in such documents. [The defendant's] focus on collateral is misplaced, because the collateral he listed in his Lien Documents is not relevant to whether he violated the statute.[18]

We agree with the Ninth Circuit's reasoning and its construction of § 1521 in this regard.

Jordan argues that the two filings with the Harris County clerk's office could not have affected property in Corpus Christi, which is where the judge and prosecutor resided; that the filings were void because they were not "filed for record as required by law"; and that they could not provide any notice unless recorded in the proper county. The foregoing discussion of the scope of § 1521 applies equally to these contentions.

With regard to the two filings in the Harris County clerk's office, Jordan further argues that they were not liens because "it's clear from the body of the document that it is an affidavit and not a lien" and that it was filed in the Harris County Real Property Records as an affidavit and not a lien. However, these documents refer, more than once, to a "commercial lien," the "lien claimant," and the "lien debtor." The jury could conclude from these filings that Jordan was attempting to file false liens or encumbrances.[19]

## III

Jordan next argues that the district court committed error by not answering the jury note that asked "[i]f a lien was filed in Harris County, does

---

[18] *Id.* at 653-54.

[19] *See id.* at 653 ("[T]he statute prohibits documents of the sort used to create liens or encumbrances. The focus is on preventing the harm such documents may cause, rather than focusing on the actual document.").

No. 15-20454
Cons w/ No. 15-41627

it affect one person's real property in Corpus Christi." No evidence on the locational effect of a filing was introduced. The judge responded to the note with the instruction that "[a]ll the evidence is already before the jury. Please continue to deliberate." Jordan timely objected. We review preserved challenges to a district court's responses to jury notes for abuse of discretion, subject to harmless error analysis.[20]

The district court did not abuse its discretion for many reasons, only a few of which we address. The U.C.C. filing was made with the Texas Secretary of State in Austin, in Travis County, Texas. It constituted a statewide filing. Its effect was not limited to Harris County, Texas.[21] As to the Harris County filings, as we have considered above, their validity was immaterial, and, therefore, whether a filing in Harris County could affect property in Corpus Christi, in Nueces County, was immaterial. Additionally, without any objection from Jordan, the district court had instructed the jury in writing before its deliberations began that it was immaterial whether the lien or encumbrance was valid or actually impaired an official's property. The jury instructions, which correctly stated the law, said, "[i]t is not a requirement that the lien or encumbrance be valid. Technical deficiencies are not a defense. It is also not a requirement that the lien or encumbrance actually impaired the government official's property rights and interests." The response to the jury note that Jordan requested would have conflicted with this instruction.

---

[20] *United States v. Boyd*, 773 F.3d 637, 646 (5th Cir. 2014); *Brown v. Sudduth*, 675 F.3d 472, 482 (5th Cir. 2012); *United States v. Ramos-Cardenas*, 524 F.3d 600, 610 (5th Cir. 2008) (per curiam).

[21] *See* TEX. BUS. & COM. CODE ANN. § 9.501(a)(2) (West); *First Nat'l Bank of Denver City v. Brewer*, 775 S.W.2d 51, 52-53 (Tex. App.—Amarillo 1989, no pet.) (noting that a party had a perfected interest in assets located in Yoakum County, Texas after filing a financing statement with the Texas Secretary of State).

No. 15-20454
Cons w/ No. 15-41627

### IV

Jordan challenges the district court's six-level sentencing enhancement under Sentencing Guideline § 2A6.1(b)(1).[22] We review a district court's application and interpretation of the Sentencing Guidelines de novo and the court's factual findings for clear error.[23] "We may affirm an enhancement on any ground supported by the record."[24]

Section 2A6.1 of the 2015 Sentencing Guidelines, titled "Threatening or Harassing Communications; Hoaxes; False Liens," assigns a base offense level of 12 for a conviction under a number of statutes, including 18 U.S.C. § 1521.[25] The enhancement to the base offense level at issue in this appeal provides: "If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels."[26]

Jordan urges us to follow *United States v. Leaming*,[27] an unpublished decision from the Ninth Circuit, which he asserts held that filing a false lien or encumbrance in violation of § 1521 is not a "threat" within the meaning of § 2A6.1(b)(1). In that case, the Ninth Circuit stated that "the enhancement only applies to defendants who engage in conduct evidencing an intent to carry out 'such threat.'"[28] The court continued that "[a]lthough [the defendant] did carry out the offense of filing a false lien, nothing in the record supports the conclusion that [the defendant] made a 'threat' within the meaning of Section 2A6.1(b)(1)."[29]

---

[22] U.S.S.G. § 2A6.1(b)(1) (2015).

[23] *United States v. Garcia-Gonzalez*, 714 F.3d 306, 314 (5th Cir. 2013).

[24] *Id.*

[25] § 2A6.1.

[26] § 2A6.1(b)(1).

[27] 596 F. App'x 535, 537 (9th Cir. 2015) (unpublished).

[28] *Id.* (quoting § 2A6.1(b)(1)).

[29] *Id.* (quoting § 2A6.1(b)(1)).

No. 15-20454
Cons w/ No. 15-41627

The Government relies upon *United States v. Small*,[30] an unpublished decision from the Seventh Circuit that appears in tension, if not in conflict, with the Ninth's Circuit's decision in *Leaming*. In *Small*, the Seventh Circuit reviewed whether counsel had correctly concluded in an *Anders* brief that there were no non-frivolous issues to be presented on appeal of a conviction under 18 U.S.C. § 1521.[31] With regard to a § 2A6.1(b)(1) sentencing enhancement applied by the sentencing court, the Seventh Circuit said:

> Counsel next considers challenging a six-level increase under U.S.S.G. § 2A6.1(b)(1) for attempting to carry out a threat. We agree with counsel that such a challenge would be frivolous because an expressed intent to harm property is a threat, and [the defendant] warned the [government official] in writing that he would file a lien against the [government official's] property unless the [government official] paid off [the defendant's] debt.[32]

Accordingly, the Seventh Circuit appears to have concluded that although there is no mention of "threat" in the text of § 1521, the enhancement under § 2A6.1(b)(1) can apply if there were threats to file a lien.

In resolving the sentencing issue, we first consider the relevant text of § 2A6.1. Subsection (a)(1) provides that the "Base Offense Level" for § 1521 is 12. Subsection (b) is titled "Specific Offense Characteristics," and subsection (b)(1) provides: "If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." Section 2A6.1 of the Guidelines is applicable to a number of offenses, and most of the statutory provisions defining those offenses prohibit making threats.[33] The application of

---

[30] 618 F. App'x 870 (7th Cir. 2015) (unpublished).

[31] *Id.* at 870-71; *see Anders v. California*, 386 U.S. 738 (1967).

[32] *Small*, 618 F. App'x at 871 (citation omitted).

[33] *See, e.g.*, 18 U.S.C. § 32(c) ("Whoever willfully imparts or conveys any threat to do an act . . . ."); *id.* § 115(b)(4) ("A threat made in violation of this section shall be punished . . . ."); *id.* § 844(e) ("Whoever . . . willfully makes any threat, or maliciously conveys false information knowing the same to be false . . . ."); *id.* § 871 ("Threats against President

10

No. 15-20454
Cons w/ No. 15-41627

subsection (b)(1) seems clear when considering the appropriate sentence for an offense that explicitly references a "threat." But we have difficulty discerning to what the phrase "such threat" refers when the statute of conviction is 18 U.S.C. § 1521, as in the present case. The words "threat" or "threatening" do not appear in § 1521, and there is no concept similar to "threat" in § 1521.[34]

Nevertheless, the Commentary to § 2A6.1 indicates that subsection (b)(1) applies to conduct that occurred before or during the offense and, therefore, can apply even if the statute of conviction does not prohibit or reference a "threat." The Commentary states:

> **Scope of Conduct to Be Considered.**—In determining whether subsections (b)(1), (b)(2), and (b)(3) apply, the court shall consider conduct that occurred prior to or during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole. For example, if the defendant

---

and successors to the Presidency"); *id.* § 876 ("Mailing threatening communications"); *id.* § 875(c) ("Whoever transmits in interstate or foreign commerce any communication containing any threat . . . ."); *id.* § 877 ("Mailing threatening communications from foreign country"); *id.* § 878(a) ("Whoever . . . threatens to violate . . . ."); *id.* § 879 ("Threats against former Presidents and certain other persons"); *id.* § 1992(a)(10) ("[A]ttempts, threatens, or conspires to engage in any violation . . . ."); *id.* § 2280(a)(2) (including "[a] person who threatens to do any act prohibited under" certain other provision of § 2280 within its definition of "[o]ffenses"); *id.* § 2291(e) ("Whoever knowingly and intentionally imparts or conveys any threat to do an act which would violate this chapter, with an apparent determination and will to carry the threat into execution . . . ."); *id.* § 2332a(a) ("A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction . . . ."); *id.* § 2332b(a)(2) ("Whoever threatens to commit an offense under paragraph (1), or attempts or conspires to do so . . . ."); 47 U.S.C. § 223(a)(1)(C)-(E) (prohibiting calls made to threaten or harass); 49 U.S.C. § 46507 ("An individual shall be fined under title 18, imprisoned for not more than 5 years, or both, if the individual . . . threatens to violate section 46502(a), 46504, 46505, or 46506 of this title . . . .").

[34] *See* 18 U.S.C. § 1521 ("Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an [officer or employee of the United States], on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.")

No. 15-20454
Cons w/ No. 15-41627

engaged in several acts of mailing threatening letters to the same victim over a period of years (including acts that occurred prior to the offense), then for purposes of determining whether subsections (b)(1), (b)(2), and (b)(3) apply, the court shall consider only those prior acts of threatening the victim that have a substantial and direct connection to the offense.[35]

Jordan does not cite or discuss this commentary. He does assert that our decision in *United States v. Goynes*[36] held that § 2A6.1(b)(1) cannot be applied unless the defendant performed an overt act evidencing an intent to carry out a threat. He argues that the letters he sent to the trial judge and prosecutor, though harassing, did not contain any threat of physical harm and did not constitute overt acts.

Our decision in *Goynes* involved a defendant who had been convicted under 18 U.S.C. § 876 of mailing threatening communications.[37] Those communications included threats to have the recipients killed and were graphic and disturbing in their content.[38] Our court followed "[t]he majority of circuit courts," which "require that a defendant engage in some form of overt act before sustaining a § 2A6.1(b)(1) enhancement."[39] We held that "the writing of multiple threatening letters and the nature of their content alone are insufficient to justify the district court's six-level enhancement."[40] We continued, "although Goynes' threats are extremely violent and one of the letters is signed in blood, we find that these acts are merely threats and not conduct sufficiently evidencing an intent to carry out a threat."[41]

---

[35] U.S.S.G. § 2A6.1 cmt. n.1 (2015).
[36] 175 F.3d 350 (5th Cir. 1999).
[37] *Id.* at 351.
[38] *Id.* at 351-52.
[39] *Id.* at 353.
[40] *Id.* at 355.
[41] *Id.*

12

No. 15-20454
Cons w/ No. 15-41627

The text of § 2A6.1(b)(1) is ambiguous in its reference to "such threats." However, the commentary indicates that the applicability of § 2A6.1(b)(1) is not limited to offenses that contain the word "threat" in the statute of conviction. Accordingly, a sentencing court may consider "conduct that occurred prior to or during the offense" that was "substantially and directly connected to the offense, under the facts of the case taken as a whole."[42]

There is evidence that Jordan threatened to file liens. A "notice" that Jordan sent to the prosecutor asserted that she had agreed that a "lien can be placed against all [of the prosecutor's] assets, wages, income, . . . [and] personal and real property." A subsequent "Notice and Demand for Payment" stated that the prosecutor must pay $6,534,500 to Jordan "to avoid a consensual lien being placed on assets" of the prosecutor. Jordan took overt actions to carry out these threats by making the filings for which he has been prosecuted. The district court did not err in applying, pursuant to § 2A6.1(b)(1), a six-level increase to the base offense level of 12.

*    *    *

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[42] U.S.S.G. § 2A6.1 cmt. n.1 (2015).