NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0381n.06

**Case No. 18-2213**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | **FILED** |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| KENNETH L. NICKERSON, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Defendant-Appellant*. | ) | |

FILED
Jul 26, 2019
DEBORAH S. HUNT, Clerk

BEFORE:    COLE, Chief Judge; GRIFFIN and BUSH, Circuit Judges.

COLE, Chief Judge.  Kenneth Nickerson pleaded guilty to threatening to assault a federal official in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4) and received a within-Guidelines sentence of 57 months' imprisonment.  On appeal, Nickerson challenges the procedural and substantive reasonableness of his sentence.  We affirm the district court's sentence.

**I. BACKGROUND**

Kenneth Nickerson receives Supplemental Security Income ("SSI") benefits for his cerebrovascular disease and affective disorders.  On June 5, 2017, Nickerson went to the Social Security Administration ("SSA") office in Ludington, Michigan, to discuss a dispute regarding his SSI benefits.  That day, Nickerson became loud and argumentative, but he caused no problems with the SSA staff.

On June 6, 2017, Nickerson returned to the SSA office and spoke with claims representative T.T. about his SSI dispute.  During this interaction, Nickerson again grew argumentative.  This time, he directed several threatening statements at T.T., including: "You will

give me the money or there will be issues here," and "I'll see you in the parking lot, [expletive]." On June 7, 2017, case agents interviewed Nickerson about the incident at the SSA, and Nickerson admitted that he had threatened T.T. and that he had "meant it." (*Id.*) The agents served Nickerson with a letter notifying him that he was banned from entering SSA property.

The next month, on July 6, 2017, a security officer spotted Nickerson sitting on a curb across the street from the same SSA office in Ludington, facing the SSA building. When the officer approached Nickerson, Nickerson stated, "I'm here to take care of business." (*Id.*) The officer told Nickerson that he could not enter SSA property, and Nickerson responded, "I know that, but I'm still going to take care of business." (*Id.*) The officer told Nickerson he could go jail for that kind of behavior, and Nickerson replied, "I don't care." (*Id.*) The security officer called for police assistance, and the police arrived to see Nickerson twirling a folding knife in his hands at the scene. Nickerson told the agents who interviewed him later that day that his plan was to harm T.T. "first chance I get [i]f I catch him off that property." (*Id.* at PageID 157.) Nickerson also admitted that he was "sitting there waiting to see" if T.T. would exit the building and that he intended to entice T.T. into leaving the SSA property so he could "beat that [expletive] to death." (*Id.*)

The government charged Nickerson with two counts of making threats against a federal official in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4). On February 22, 2018, Nickerson pleaded guilty to one count of making threats against a federal official, and the government agreed to move to dismiss the second count.

In Nickerson's pre-sentence report ("PSR"), the probation office recommended applying two enhancements to Nickerson's sentence: a six-level enhancement under U.S.S.G. § 2A6.1(b)(1) for conduct evidencing an intent to carry out his threat, and a six-level enhancement under U.S.S.G. § 3A1.2(b) because Nickerson's actions were motivated by T.T.'s status as a government employee. Nickerson objected to these enhancements, arguing that he could not have carried out the threat due to a stroke he had suffered in 2011 and that adding an enhancement based on T.T.'s status as a government official amounted to double counting.

At the sentencing hearing on October 11, 2018, the district court overruled Nickerson's objections and applied both enhancements. This would have resulted in a final offense level of 21, a criminal history category of V, and an advisory guideline range of 70 to 87 months'

imprisonment, but the government moved for a downward departure based on Nickerson's substantial assistance in an unrelated case, and the district court granted that motion. Thus, Nickerson's final offense level was 19 with an advisory range of 57 to 71 months' imprisonment. Nickerson urged the court to consider treatment rather than imprisonment, but the court imposed a within-Guidelines sentence of 57 months' imprisonment, three years of supervised release, and a special assessment of $100.

On October 11, 2018, the district court entered its judgment. On October 15, 2018, Nickerson filed a timely notice of appeal, challenging only his sentence, not his underlying conviction.

## II. ANALYSIS

Nickerson raises three issues on appeal. First, he argues that his sentence is procedurally unreasonable because the district court miscalculated the applicable Guidelines range by inappropriately applying the § 2A6.1 enhancement. *See United States v. Collins*, 799 F.3d 554, 592 (6th Cir. 2015). Second, he argues that his sentence is procedurally unreasonable because the district court's application of the § 3A1.2 enhancement amounted to double counting. *See United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). Third, he argues that his sentence is substantively unreasonable because it is greater than necessary. *See United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008). We address each argument in turn below.

### A. Application of U.S.S.G. § 2A6.1

U.S.S.G. § 2A6.1(b)(1) provides for a six-level enhancement for threatening communications if "the offense involved any conduct evidencing an intent to carry out such threat[.]" Nickerson argues that he still suffers serious physical limitations as a result of his stroke, and he contends that the fact that he would have been physically unable to carry out the threat severs the requisite nexus between his conduct and his intent to carry out his threats.

"When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact *de novo*." *United States v. May*, 568 F.3d 597, 604 (6th Cir. 2009). "Whether [a defendant] engaged in conduct evidencing an intent to carry out the threats [under U.S.S.G. § 2A6.1] raises a mixed question of law and fact"—courts review "the district court's factual findings under a clearly

erroneous standard, [and] whether the facts evidence an intent to carry out the threat is a question of law and is reviewed *de novo.*" *United States v. Scott*, 441 F.3d 1322, 1328 (11th Cir. 2006) (per curiam). Nickerson did not object to any of the material facts in the PSR, and the district court adopted those facts in full. Thus, the question presented on appeal is whether the conduct described in the PSR is sufficient to evidence Nickerson's intent to carry out the threat as a matter of law.

To start, we disagree that Nickerson's physical limitations foreclose a finding that his conduct indicated intent to carry out his threats. Even assuming that Nickerson's physical limitations would have prevented him from succeeding in assaulting T.T., we agree with the First Circuit that, while "a district court charged with determining whether a defendant believed it to be possible to effectuate a threat is free to consider the apparent impossibility of using a given means to achieve a given end[,] objective impossibility does not necessarily preclude subjective belief." *United States v. Dixon*, 449 F.3d 194, 200 (1st Cir. 2006). The question before us is not whether Nickerson was physically able to carry out his threats against T.T., but whether his undisputed conduct demonstrated his *intent* to do so.

In analyzing whether a defendant's conduct indicates intent to carry out his threats, this court has adopted the majority rule "that the defendant engage in some overt conduct in addition to making the threats before a § 2A6.1(b)(1) enhancement can be sustained." *United States v. Newell*, 309 F.3d 396, 404 (6th Cir. 2002) (citing *United States v. Goynes*, 175 F.3d 350, 353 & n.2 (5th Cir. 1999)). "Consideration of the tone of the threats, viewed in conjunction with the defendant's other overt conduct, is proper in determining whether the defendant intended to carry out his threats," but the district court "may not rely on the threats alone to apply a § 2A6.1(b)(1) six-level enhancement." *Id.* at 403.

In *United States v. Wagoner*, 564 F. App'x 780, 782–83 (6th Cir. 2014) (per curiam), we considered the application of the enhancement to a similarly situated defendant: an individual who threatened a federal official who worked for the SSA. In that case, the defendant told the official, "If you do not give me my check by Friday, I will come and terminate you." *Id.* at 782. That Friday, the defendant returned to the official's workplace with an aluminum bat. *Id.* at 782–83. This court found:

> Going to where [the official] worked on the stated deadline with an aluminum bat establishes a nexus between [the defendant]'s conduct and his threat to "terminate" [the official]. *See Newell*, 309 F.3d at 402 (holding that the defendant's purchase

of a firearm and ammunition on the same day that he made a threat "demonstrates that his threats are 'more than mere puffery,' and evidences an intent to carry out the threats").

*Id.* at 783. This case is not meaningfully distinguishable from *Wagoner*: after threatening a federal official, Nickerson returned to that official's workplace on a later date—despite being banned from the premises—and continued to threaten to harm the official, with a knife in hand. Although Nickerson's words alone would not be sufficient as a matter of law to apply the § 2A6.1 enhancement, Nickerson's continued insistence that he intended to harm T.T., viewed in conjunction with his conduct of returning to the official's workplace with a weapon, is consistent with the overt acts we deemed sufficient in *Wagoner* and *Newell*.

Nickerson notes that, unlike the defendant in *Wagoner*, he did not technically bring the weapon onto the SSA property and did not menace anyone with a weapon. But we are not persuaded that brandishing a knife while lying in wait across the street from the victim's workplace is any less indicative of Nickerson's intent, especially when viewed alongside Nickerson's statement that his reason for sitting across the street was to wait for T.T. to leave the building and entice him off of the property so that Nickerson could beat him to death. Thus, we uphold the district court's application of the § 2A6.1 enhancement.

## B. Application of U.S.S.G. § 3A1.2

U.S.S.G. § 3A1.2(b) provides for a six-level enhancement if "the victim was a government officer or employee[,] the offense of conviction was motivated by such status," and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person)." Nickerson argues that, because an element of his underlying criminal offense accounted for the victim's status as a government official, applying this enhancement amounts to impermissible double counting. *See United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017) ("It is well established that impermissible double counting occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." (internal quotation marks omitted)). "We review the district court's application of the Guidelines de novo." *United States v. Cousins*, 469 F.3d 572, 575 (6th Cir. 2006), *abrogated on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008).

The comments to U.S.S.G. § 3A1.2 instruct courts not to apply the enhancement "if the offense guideline specifically incorporates this factor." U.S.S.G. § 3A1.2, cmt. 2. Although the

comment in question notes that the "only offense guideline in Chapter Two that specifically incorporates this factor is § 2A2.4 (Obstructing or Impeding Officers)," *id.*, Nickerson argues that the same rationale applies to § 2A6.1 here. In this case, U.S.S.G. § 2A6.1 was applied because Appendix A to the United States Sentencing Guidelines Manual links it to 18 U.S.C. § 115(b)(4), which criminalizes "threaten[ing] to assault . . . a United States official . . . with intent to impede, intimidate, or interfere with such official . . . while engaged in the performance of official duties, or with intent to retaliate against such official . . . on account of the performance of official duties[.]" 18 U.S.C. § 115(a)(1)(B), (b)(4). Therefore, although U.S.S.G. § 2A6.1 does not facially incorporate the victim's status as a government official, Nickerson contends that the enhancement effectively accounts for a victim's official status when applied to violations of 18 U.S.C. § 115(b)(4).

This court has already rejected the argument that U.S.S.G. § 2A6.1 itself incorporates victim status into the offense guideline. *Cousins*, 469 F.3d at 575. As Nickerson acknowledges, the language of § 2A6.1 makes no reference to the victim's status as a government official; in contrast, § 2A6.1 provides the same base offense level of 12 to all threatening communications, regardless of whether the victim of those threats is a government official. *Id.*; *see also* U.S.S.G. Appendix A (linking § 2A6.1's base offense level to offenses with no victim status requirement, including 18 U.S.C. §§ 32(c), 35(b), 875(c), 1992(a)(10), 2280, 2291, 2292, 2332a and 47 U.S.C. 223(a)(1)(C)–(E)). Because "[t]he offense guideline . . . does not account for the victim being an official[,] no double counting has occurred." *United States v. Talley*, 164 F.3d 989, 1004 (6th Cir. 1999); *see also United States v. Green*, 25 F.3d 206, 211 (3d Cir. 1994) (finding no impermissible double counting where U.S.S.G. § 3A1.2 enhancement applied to defendant convicted under 18 U.S.C. § 115(a)(1)(B)); *United States v. Pacione*, 950 F.2d 1348, 1356 (7th Cir. 1991) (same).

Nickerson's argument that Amendment 718 to the Guidelines vitiates our prior rejection of the double counting argument is also unavailing. Nickerson's proposed reading of the amendment—that courts can only apply the § 3A1.2 enhancement alongside a § 2A6.1 enhancement where the underlying criminal offense is a violation of 18 U.S.C. § 1521—is inconsistent with the reason for the amendment provided by the Sentencing Committee. Reason for Am. 718, U.S.S.G. Suppl. to Appendix C at 288–89 (Nov. 1, 2008). The amendment sought to clarify that the § 3A1.2 enhancement is applicable when the underlying offense is a violation of 18 U.S.C. § 1521, but the amendment did not suggest the § 3A1.2 enhancement is applicable

*exclusively* when the underlying offense is a violation of 18 U.S.C. § 1521. The amendment has no bearing on our earlier reading of § 2A6.1.

Nickerson correctly observes that the underlying criminal offense contains a requirement that the victim of the threat was a federal official. But the fact that victim status was both an element of Nickerson's underlying offense and an element of one of his Guidelines enhancements does not amount to double counting, because the statute and the Guidelines enhancements played different roles in determining Nickerson's ultimate sentence. *See United States v. Williams*, 500 F. App'x 364, 365 (6th Cir. 2012). The statutory language in 18 U.S.C. § 115(b)(4) established a statutory maximum of six years' imprisonment for threatening to assault a government official. In contrast, the Guidelines "produced a nonbinding recommendation that merely served (along with the other factors in 18 U.S.C. § 3553(a)) to guide the court in selecting an appropriate sentence" *within* the range established by § 115(b)(4), not *in addition to* the range established by § 115(b)(4). *Williams*, 500 F. App'x at 365. In other words, the statute used the victim's status to identify the "outer limits of [the district court's] sentencing discretion," whereas the Guidelines used the victim's status to identify "the particular sentence recommended by the Sentencing Commission" within those outer limitations. *Id.* No double counting of the victim's status occurred here. Thus, we uphold the district court's application of the § 3A1.2 enhancement.

## C. Substantive Reasonableness

"For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *Vowell*, 516 F.3d at 512 (internal quotation marks omitted) (quoting *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)). The "Guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008). Thus, "[w]hen a district court imposes a sentence that is within the advisory guidelines range, the sentence is accorded a rebuttable presumption of reasonableness." *United States v. Kirchhof*, 505 F.3d 409, 414 (6th Cir. 2007). We review the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Nickerson argues that his sentence was greater than necessary, and he argues that the district court erred in rejecting his request for time served or for a downward variance in light of his health struggles. But the fact that a defendant did "not get the outcome he requested is insufficient" to overcome the presumption of reasonableness afforded to within-Guidelines sentences, "particularly where the district court followed the mandate of section 3553(a) in all relevant respects." *United States v. Hunt*, 728 F. App'x 432, 436 (6th Cir. 2018) (quoting *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006)). Here, the district court expressly considered whether the Guidelines range reflected the need for the imposed sentence to provide just punishment, promote respect for the law and deterrence, protect the public, and provide medical and correctional treatment for the defendant, and it determined that the lowest end of the Guidelines range appropriately responded to each of those concerns. Thus, the district court did not abuse its discretion in imposing the within-Guidelines sentence.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's sentence.